## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK DIVISION

| | |
|---|---|
| KEVIN DAVITT, SCOTT CARTER and MARK TUDYK individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HONDA NORTH AMERICA, INC., AMERICAN HONDA MOTOR CO., INC., and HONDA MOTOR COMPANY, LTD.,<br><br>Defendants. | No. 2:13-cv-00381-FSH-PS<br><br><br>**CLASS ACTION**<br><br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs Kevin Davitt, Scott Carter and Mark Tudyk (together, "Plaintiffs"), bring this action against Defendants Honda North America, Inc. ("Honda North America"), American Honda Motor Co., Inc. ("American Honda"), and Honda Motor Company, Ltd. ("Honda Motor Company") (collectively "Defendants" or "Honda"), by and through their attorneys, individually and behalf of all others similarly situated, and allege as follows:

## INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former Honda vehicle owners and lessees

with defective door locking actuators in model years ("MY") 2007-2011 Honda CR-V vehicles (the "Class Vehicles" or "Vehicles").[1]  As discussed in more detail below, the actuator is the electromechanical component in the door locking system that, when working properly, locks and unlocks the doors.

2.     This action arises from Defendants' failure, despite their longstanding knowledge of a material design defect, to disclose to Plaintiffs and other consumers that the Class Vehicles are predisposed to a door lock actuator defect (collectively, the "Door Lock Defect").  This defect – which typically manifests during and shortly after the limited warranty period has expired – will inevitably cause the door lock actuators in the Class Vehicles to fail.  Once the door lock actuators cease operating properly, the door locking mechanism(s) fail to function as intended and expected.

3.     Significantly, when the Door Lock Defect occurs it poses a safety risk to the operator and passengers of the vehicle since the door locking and unlocking features fail to operate correctly.  In some instances, single or multiple doors on the Class Vehicles may not lock at any time, whether the vehicle is turned on or off, despite actions or commands by the operator.  This jeopardizes the safety of Vehicle occupants by making them more vulnerable to potential crime, unintentional door openings during operation, and other risks that could have

_____

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

otherwise been avoided. This defect also renders the Class Vehicles and their contents vulnerable to theft when left unattended.

4. In other instances, the doors of Class Vehicles may not unlock electronically despite the necessary commands. This could pose a serious safety concern when Class Vehicles are involved in vehicular accidents since the occupants may become entrapped when the Door Lock Defect prevents an occupant from unlocking the doors. Furthermore, this defect jeopardizes the safety of Vehicle occupants since not all doors are capable of being manually unlocked from the exterior. Instead, and with the exception of the Vehicle's driver door, the electronic locking mechanism is the only method available to gain access to the Vehicle from the exterior. While this issue risks the safety of all occupants, the Door Lock Defect poses an acute risk to young children occupying the rear seat since they may be unable to open the door from inside the vehicle and, due to the lack of an exterior locking mechanism, an individual on the outside may not be able to unlock these doors and gain interior access.

5. Not only did Honda actively conceal the fact that particular components within the door locking system are defective (and require costly repairs to fix), they did not reveal that the existence of this defect would diminish the intrinsic and resale value of the Class Vehicles and lead to the safety concerns described within.

6.      Honda has long been well aware of the Door Lock Defect.  Despite its longstanding knowledge of this design defect, Honda has routinely refused to repair the Class Vehicles without charge when the defect manifests.

7.      Many owners and lessees of Class Vehicles have communicated with Defendants' agents to request that Honda remedy and/or address the Door Lock Defect and/or resultant damage at no expense.  Defendants have failed and/or refused to do so – often conveying to Vehicle owners that the failed parts comprising the Door Lock Defect are considered "maintenance" and/or "wear" items and not covered under warranty.

8.      For customers with vehicles within the written warranty period (which extends for the shorter of 3 years or 36,000 miles), Honda has done nothing more than temporarily repair the Door Lock Defect, or replace it with other similarly defective and inherently failure-prone door lock actuators.  Honda has refused to take any action to correct this concealed design defect when it manifests in vehicles outside the warranty period.  Since the Door Lock Defect typically manifests shortly outside of the warranty period for the Class Vehicles – and given Defendants' knowledge of this concealed, safety related design defect, unequal bargaining power, and other factors discussed below – Honda's attempt to limit the warranty with respect to the Door Lock Defect is unconscionable here.

9.      Despite notice and knowledge of the Door Lock Defect from the

numerous consumer complaints it has received, information received from dealers, National Highway Traffic Safety Administration ("NHTSA") complaints, and its own internal records, Honda has not recalled the Class Vehicles to repair the Door Lock Defect, offered its customers a suitable repair or replacement free of charge, or offered to reimburse its customers who have incurred out of pocket expenses to repair the defect.

10.    As a result of Defendants' unfair, deceptive and/or fraudulent business practices, owners and/or lessees of Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value.  The unfair and deceptive trade practices committed by Defendants were conducted in a manner giving rise to substantial aggravating circumstances.

11.    Had Plaintiffs and other Class members known about the Door Lock Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid substantially less for them.

12.    As a result of the Door Lock Defect and the considerable monetary costs associated with attempting to repair such defect, Plaintiffs and Class members have suffered injury in fact, incurred damages and have otherwise been harmed by Honda's conduct.

13.    Accordingly, Plaintiffs bring this action to redress Defendants' violations of the New Jersey, Florida and California consumer fraud statutes, and

also seek recovery for Defendants' breach of express warranty, breach of the covenant of good faith and fair dealing, common law fraud and, alternatively, unjust enrichment.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendants transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Additionally, Defendants have advertised in this district and have received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

16.    This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and

purposefully placed Class Vehicles into the stream of commerce within the districts of New Jersey and throughout the United States.

**THE PARTIES**

**The Plaintiffs**

**A.     Plaintiff Davitt**

17.     Plaintiff Kevin Davitt ("Davitt") is a citizen of the State of New Jersey, residing at 153 Glen Avenue, Glen Rock, New Jersey, 07452.

18.     In or around 2007, Plaintiff Davitt purchased a new 2007 Honda CR-V from Mahwah Honda, an authorized Honda dealer and repair center located in Mahwah, New Jersey.

19.     Plaintiff Davitt purchased (and still owns) this vehicle, which is used for personal, family and/or household uses.  His vehicle bears Vehicle Identification Number: JHLRE48567C112216.

20.     In or around December 2012, Plaintiff Davitt noticed the rear passenger door lock of his 2007 Honda CR-V would not remain in the "unlock" position despite commands to unlock.  By way of further example, the rear passenger door of Plaintiff Davitt's vehicle would automatically, and almost immediately, relock on its own when he attempted to unlock the doors.  This occurred both when using the vehicle's Frequency Operated Button ("FOB") to remotely unlock the doors, as well as the interior power door locking switches.  Furthermore, the rear-passenger door would also not remain in an unlock position

even when Plaintiff Davitt put his vehicle's transmission into the "Park" position.

21.     Plaintiff Davitt has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Door Lock Defect, including, but not limited to, out of pocket loss associated with the Door Lock Defect and future attempted repairs and diminished value of his vehicle.

22.     None of the Defendants, or any of their agents, dealers or other representatives informed Plaintiff of the existence of the Door Lock Defect and/or defective vehicle design prior to purchase.

**B.     Plaintiff Carter**

23.     Plaintiff Scott Carter ("Carter") is a citizen of the State of California, residing at 864 Carmel Avenue, Los Altos, California, 94022.

24.     In or around 2008, Plaintiff Carter purchased a new 2008 Honda CR-V from Larry Hopkins Honda ("Hopkins"), an authorized Honda dealer and repair center located in Sunnyvale, California.

25.     Plaintiff Carter purchased (and still owns) this vehicle, which is used for personal, family and/or household uses.  His vehicle bears Vehicle Identification Number: JHLRE38558C048245.

26.     In or around September 2011, Plaintiff Carter noticed the front driver door lock in his 2008 Honda CR-V began automatically, and almost immediately, relocking on its own when he attempted to unlock the doors.  This occurred both

when using the vehicle's key FOB to remotely unlock the doors, as well as, the interior power door locking switches.  Furthermore, the front driver door would also not remain in an unlock position even when Plaintiff Carter put his vehicle's transmission into the "Park" position.

27.    On or about September 23, 2011, Plaintiff Carter took his vehicle to Hopkins for diagnosis of the front door locking issue.  A repair technician examined Plaintiff Carter's vehicle and noted "CHECKED AND TRACED TO DRIVERS DOOR LOCK ACTUATOR HAS INTERNAL FAILURE AND NEEDS LOCK ACTUATOR. ACTUATOR MUST BE SPECIAL ORDERED PART # 72150-SWA-A01 $71.73 LABOR TO INSTALL $225.00[.]"  Plaintiff Carter paid $150.00 for diagnosis of the failed actuator and an additional $302.65 on September 30, 2011 for parts and installation related to the replacement door lock actuator.

28.    On or about August 30, 2012, Plaintiff Carter noticed that the rear driver's door lock of his vehicle would not lock on most occasions despite locking commands through use of the key FOB and internal door switch.  He was also unable to lock this door manually when the problem occurred.

29.    Plaintiff Carter again took his vehicle to Hopkins for diagnosis of the door locking issue.  A repair technician examined Plaintiff Carter's vehicle, found the rear driver's door lock actuator to be inoperable, and recommended

replacement.  Plaintiff Carter thereafter paid $287.08 for parts and installation related to a new door lock actuator.

30.    Plaintiff Carter has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Door Lock Defect, including, but not limited to, out of pocket loss associated with the Door Lock Defect and future attempted repairs and diminished value of his vehicle.

31.    None of the Defendants, or any of their agents, dealers or other representatives informed Plaintiff of the existence of the Door Lock Defect and/or defective vehicle design prior to purchase.

**C.    Plaintiff Tudyk**

32.    Plaintiff Mark Tudyk ("Tudyk") is a citizen of the State of Florida, residing at 7719 Latrobe Court, Bradenton, Florida, 34202-2512.

33.    In or around December 2007, Plaintiff Tudyk purchased a new 2008 Honda CR-V from Honda Cars of Bradenton, currently d/b/a Hendrick Honda Bradenton.

34.    Plaintiff Tudyk purchased (and still owns) this vehicle, which is used for personal, family and/or household uses.  His vehicle bears Vehicle Identification Number: JHLRE38718C015633.

35.    In or around December 2012, Plaintiff Tudyk noticed that the rear driver's door lock in his 2008 Honda CR-V would not lock despite locking

commands through use of the key FOB and internal door switch.  He was also unable to lock this door manually from the interior when the problem occurred.

36.    Plaintiff Tudyk took his vehicle to Hendrick Honda Bradenton ("Hendrick"), an authorized Honda dealer and repair center located in Bradenton, Florida, for diagnosis of the door locking issue.  A repair technician examined Plaintiff Tudyk's vehicle, found the rear driver's door lock actuator suffered an "internal failure" and recommended replacement.  Plaintiff Tudyk thereafter paid approximately $225.29 for parts and installation related to a new door lock actuator.

37.    Shortly thereafter, Plaintiff Tudyk lodged a complaint with Honda North America regarding the December 2012 repair of the door lock actuator in his vehicle.  As a result, Defendant sent Plaintiff Tudyk a "goodwill" gesture in the amount of $100.

38.    Plaintiff Tudyk has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Door Lock Defect, including, but not limited to, out of pocket loss associated with the Door Lock Defect and future attempted repairs and diminished value of his vehicle.

39.    None of the Defendants, or any of their agents, dealers or other representatives informed Plaintiff of the existence of the Door Lock Defect and/or defective vehicle design prior to purchase.

**The Defendants**

40.   Defendants Honda North America, American Honda, and Honda Motor Company are automobile design, manufacturing, distribution, and/or servicing corporations doing business within the United States.  Furthermore, Defendants design, manufacture, distribute, market, service, repair, sell and lease passenger vehicles, including the Class Vehicles.

41.   Defendant Honda Motor Company, Ltd., 1-1, 2-chome, Minami-Aoyama, Minato-ku, Tokyo 107-8556, Japan is an automobile design, manufacturing, sale, leasing, distribution, and servicing corporation organized under the laws of Japan.  Honda Motor Company is the parent corporation of American Honda and Honda North America.

42.   Honda North America has its principal place of business at 700 Van Ness Avenue, Torrance, California 90501-1486.  American Honda has its principal place of business at 1919 Torrance Boulevard, Torrance, California 90501-2746.

43.   Upon information and belief, Defendant Honda Motor Company communicates with Defendants Honda North America and American Honda concerning virtually all aspects of the Honda products it distributes within the United States.

44.   Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation and decisions regarding the door lock

actuators within the Class Vehicles were performed exclusively by Defendants.

45.     Upon information and belief, Defendants develop the owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for Class Vehicles.

46.     Defendants Honda North America, American Honda, and Honda Motor Company engage in continuous and substantial business in New Jersey.

## TOLLING OF STATUTES OF LIMITATION

47.     Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein.  Plaintiffs and members of the Class could not have reasonably discovered the true, latent defective nature of the Door Lock Defect until shortly before this class action litigation was commenced.

48.     Defendants were and remain under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality and nature of the Class Vehicles, that this defect is based on a poor design, and that it will require costly repairs, poses a safety concern, and diminishes the resale value of the Class Vehicles.  As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**A.      The Door Lock Defect within the Class Vehicles.**

49.      The Honda CR-V is a compact Sport Utility Vehicle ("SUV") first introduced in Japan in 1995.  The CR-V model went on sale to North American markets in February 1997.

50.      A redesigned CR-V model, known as the "third-generation," was launched for MY's 2007-2011.  For 2007, the CR-V became one of the ten best-selling vehicles of the year, outselling competing models such as the Toyota RAV4, Ford Escape, and Chevrolet Tahoe.

51.      The third-generation CR-V's, or Class Vehicles, were available in "LX", "EX", and "EX-L" trim models.  An "SE" trim model was also available, but only on the MY 2011 Class Vehicles.  All of the Class Vehicles were marketed as containing the power door locks as standard equipment, regardless of the trim model selected by the purchaser.

52.      Power door locks (also known as electronic door locks or central locking) allow the driver or front passenger to simultaneously lock or unlock all the doors of an automobile or truck, through use of an interior lock/unlock button or switch, an exterior manual locking mechanism, and/or a key FOB.

53.    The components of a power door locking system include, *inter alia*, a latch, metal rod, cables, and an actuator.  Typically, inside the door of a vehicle equipped with power door locks is a metal latch.  The main function of this component is to keep the car door shut.  The latch is then connected to an electromechanical door lock actuator, which is a small motor that moves the latch up and down based on electronic commands by the vehicle operator.  Another rod or cable is connected to the manual door lock button. This can take the form of a rod protruding from the top of the door or a flip-style switch near the interior door handle.  The exterior door handle is connected to a metal rod inside of the car door, but this rod engages only if the latch is in the unlock position.  If the manual door lock button is in the "lock" position, or if the actuator lowered the latch, the rod connected to the door handle will disengage from the latch and will not be able to open the door.

54.    The picture below exemplifies interior door components generally comprising a power door locking system:



A  Rod connected to
   unlocking knob
B  Latch
C  Actuator
© 2000 How Stuff Works

55.    The components of the power door locking system in the Class

Vehicles also include, *inter alia*, a latch, metal rod, cables, and a door lock

actuator.  The picture below illustrates the interior door components comprising

the power door locking system in the Class Vehicles.  Specifically, as indicated by

the arrow, figures numbered "1" and/or "19" refer to the latch/actuator unit.



56.   The power door locking system contained in the Class Vehicles is designed to be operated through the use of interior electronic switches or, when the operator is on the exterior of the vehicle, through the use of a radio transmitter in the vehicle's key FOB.

**Honda CR-V Driver Side Power Window and Door Lock Controls**



**Honda CR-V Passenger Side Power Window and Door Lock Control**



**Honda CR-V Key FOB with Lock and Unlock Buttons**



57.     The Class Vehicles' power door locking system can also be operated

through the programmable automatic lock/unlock features, outlined below:



**Honda CR-V Technology Reference Guide**

58.     When the Door Lock Defect manifests in the Class Vehicles, the

power door locking system will no longer respond properly through the use of the

interior electronic door lock switches, the vehicle's key FOB or the programmable automatic lock/unlock features. As a result, and where possible, the operator must manually operate the door locking system.

59. In the Class Vehicles, the interior manual door lock/unlock button is a flip-style door lock switch near the interior door handle rather than a rod protruding from the top of the door panel. This interior door handle is connected to a cable inside of the car door, but this cable engages only if the latch is in the unlock position. If the flip-style door lock switch is in the "lock" position, or if the actuator lowered the latch, the cable connected to the interior door handle will disengage from the latch and an occupant will not be able to open the door from the interior. The below pictures illustrate the Class Vehicles' flip-style interior door lock switch.

**Honda CR-V passenger door in locked position:**

**Honda CR-V passenger door in unlocked position:**



60.    The exterior door lock/unlock mechanism on the Class Vehicles, located only on the front driver's side door handle, can be manually operated from the exterior by inserting the Vehicle's ignition key.  The remaining Vehicle doors do not have any similar exterior method of manually locking and/or unlocking the doors.  The below pictures illustrate the Class Vehicles' exterior door locking mechanism on the front driver side door and the lack of any similar feature on the remaining doors.

**Honda CR-V Front Driver Side Exterior Door Handle with Key Lock**



**Honda CR-V Front Passenger Side Exterior Door Handle without Key Lock**



**Honda CR-V Rear Driver Side Exterior Door Handle without Key Lock**



**Honda CR-V Rear Passenger Side Exterior Door Handle without Key Lock**



61.     If the interior flip-style door lock/unlock switch is in the "lock"

position, or if the actuator lowered the latch, the metal rod connected to the

exterior door handle will disengage from the latch and an individual will not be

able to open the door from the exterior.  Since, with the exception of the front

driver's door, the Class Vehicle doors do not have a manual exterior method of

locking and unlocking the doors, an individual may not be able to gain access to

the interior of the Vehicles when the Door Lock Defect manifests.  This presents a

serious safety issue when young children, and others requiring assistance, are

passengers in the Class Vehicles since these individuals may become entrapped

due to the Door Lock Defect.

62.    In Class Vehicles, the latch and door lock actuator are manufactured,

sold, serviced and repaired as one unit.  Therefore, when the door lock actuator

fails and necessitates replacement, the door latch must also be replaced.  The

combined door lock actuator and latch unit contained in the Class Vehicles is

shown below.

**Honda CR-V Door Latch and Actuator Unit – View #1**



**Honda CR-V Door Latch and Actuator Unit – View #2**



63.     Power door lock systems are designed to function for periods (and mileages) substantially in excess of those specified in Defendants' warranties, and given past experience, consumers legitimately expect to enjoy the use of an automobile without worry that the power door lock systems will fail for significantly longer than the limited times and mileages identified in Defendants' warranties

64.     Automobiles must incorporate designs that are able to withstand foreseeable usage conditions such as locking and unlocking the doors electronically.  A vehicle can suffer extensive damage and costly repairs from customary environmental and usage conditions when an insufficient vehicle design is implemented.

65.    The Class Vehicles were manufactured with insufficient and defective door lock actuator mechanisms.  This defect renders the Class Vehicles prone to premature door lock actuator failure.  Once the door lock actuators cease operating properly, the door locking mechanism(s) fail to function as intended and expected. The Door Lock Defect poses serious safety and security issues for operators and occupants of the Class Vehicles.

66.    In many instances, consumers have incurred and will continue to incur expenses for repair and/or replacement of the defective door lock actuators despite such defect having been contained in the Class Vehicles when manufactured by Defendants.

67.    Upon information and belief, Defendants, through (1) their own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration (NHTSA), (4) warranty and post-warranty claims, (5) internal durability testing, and (5) other various sources, were well aware of the Door Lock Defect but failed to notify customers of the nature and extent of the problems with the Class Vehicle door locking systems or provide any adequate remedy.

68.    Defendants failed to adequately research, design, test and/or manufacture the electronic door locking system before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in

an intended and/or reasonably foreseeable manner.

69.     Defendants expressly warranted the affected vehicles to be free from defects for a period of 3 years or 36,000 miles.

70.     Buyers, lessees, and other owners of the affected Vehicles were without access to the information concealed by Defendants as described herein, and therefore reasonably relied on Defendants' representations and warranties regarding the quality, durability, and other material characteristics of the Vehicles. Had these buyers and lessees known of the defect and the potential danger, they would have taken steps to avoid that danger and/or would have paid less for the Vehicles than the amounts they actually paid, or would not have purchased the Vehicles.

**B.     Complaints by Other Class Members.**

71.     Plaintiffs' experiences are by no means isolated or outlying occurrences.  Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Door Lock Defect within the Class Vehicles.[2]

72.     Owners of Honda CRV models have publicly complained to the

[2]  *See* http://townhall-talk.edmunds.com/direct/view/.f18adcc/0; http://www.youtube.com/watch?v=PEZ0s9oyq4o; http://www.crvownersclub.com/forums/14-problems-issues/14478-2007-cr-v-door-lock-problem.html; and http://www.crvownersclub.com/forums/14-problems-issues/17363-2007-3rd-gen-door-lock-actuator-replacement.html

United States government about the Door Lock Defect in Class Vehicles and similar door lock failures contained in other CRV models with the same or similar door locking design for more than a decade.  The Office of Defects Investigation (ODI) is an office within the National Highway Traffic Safety Administration (NHTSA).  ODI conducts defect investigations and administers safety recalls to support the NHTSA's mission to improve safety on the Nation's highways.  The following are just a small sampling of the many complaints submitted to ODI by Honda CR-V owners.  These publicly available complaints, filed as early as 2001, evidence Defendants' prior knowledge of the Door Lock Defect, the negative experiences encountered by CR-V owners and the serious safety concerns the Door Lock Defect presents to vehicle occupants.

**DATE OF INCIDENT:** September 11, 2000
**DATE COMPLAINT FILED:** May 11, 2001
**NHTSA/ODI ID:** 888029
**MODEL:** 1999 Honda CR-V
**SUMMARY:**
ONLY WAY TO UNLOCK PASSENGER'S DOOR IS BY USING DRIVER'S SIDE BUTTON. CONSUMER FEELS THIS IS A SAFETY CONCERN BECAUSE IF IN AN ACCIDENT AND PASSENGER WAS UNCONSCIOUS HOW WOULD THEY GET OUT. *AK CONSUMER STATES PASSENGER NOT ABLE TO USE HANDLE TO GET OUT OF VEHICLE. *JB

**DATE OF INCIDENT:** August 15, 2003
**DATE COMPLAINT FILED:** September 12, 2003
**NHTSA/ODI ID:** 10034052
**MODEL:** 1998 Honda CR-V
**SUMMARY:**

CONSUMER STATED THE BACK DOOR LATCH WAS BROKEN.
THIS HAS BEEN SLOWLY DETERIORATING FOR ABOUT TWO
MONTHS. CONSUMER CONSULTED MECHANIC AND WAS
TOLD IT WOULD COST APPROXIMATELY $200.00 SINCE IT
WAS NOT ON RECALL. THE CONSUMER BELIEVED IT WAS A
DEFECT. *AK *PH *JB


**DATE OF INCIDENT:** August 31, 2004
**DATE COMPLAINT FILED:** September 7, 2004
**NHTSA/ODI ID:** 10090561
**MODEL:** 1998 Honda CR-V
**SUMMARY:**
2 POWER DRIVEN DOOR LOCKS (PASSENGER & DRIVER SIDE)
ON A 1998 HONDA CRV HAVE BOTH FAILED. THE FAILURE
WAS THE INABILITY TO ENTER THE VEHICLE (DRIVER SIDE)
OR EXIT THE VEHICLE (DRIVER AND PASSENGER). BOTH
LOCKS NEEDED TO BE REPLACED WITHIN 6 MONTHS (FEB -
AUG '04). ADDITIONALLY, THE HATCH LOCK ALSO FAILED
AND NEEDED REPLACEMENT. SPEAKING WITH AMERICAN
HONDA AND SINCE THE MILEAGE IS 125 - 130K MILES, THEY
INDICATED THERE WAS NOTHING THEY COULD DO AS WELL
AS THEY HAD NO RECALLS ON THE VEHICLES. THE
DEALERSHIP HOWEVER HAD INDICATED THAT THERE HAVE
BEEN INTERMITTENT PROBLEMS WITH LOCKS REQUIRING
REPAIR.*AK


**DATE OF INCIDENT:** February 17, 2005
**DATE COMPLAINT FILED:** March 16, 2005
**NHTSA/ODI ID:** 10114205
**MODEL:** 2001 Honda CR-V
**SUMMARY:**
MY WIFE AND I HAVE A 2001 HONDA CR-V. WITHIN THE SPAN
OF A FEW MONTHS, THE DOOR LOCKS ON ALL FOUR DOORS
MALFUNCTIONED AND BROKE. THE LOCK ON THE FRONT
PASSENGER-SIDE DOOR BROKE IN A POSITION THAT
PREVENTS THE PASSENGER FROM BEING ABLE TO OPEN THE
DOOR, WHICH IS A SAFETY CONCERN FOR US. OUR
DEALERSHIP INFORMED US THAT IT WOULD COST OVER $300

PER LOCK FOR REPAIR. WE HAVE NOT YET HAD THE FRONT
PASSENGER-SIDE LOCK FIXED DUE TO THE COST, SO THE
LOCK IS STILL BROKEN. WE HAVE ALSO NOT YET HAD THE
LOCK ON EITHER REAR DOOR REPLACED, ALSO DUE TO THE
COST.*AK

**DATE OF INCIDENT:** November 23, 2006
**DATE COMPLAINT FILED:** November 30, 2006
**NHTSA/ODI ID:** 10174790
**MODEL:** 1999 Honda CR-V
**SUMMARY:**
ON THREE SEPARATE OCCASIONS, I HAVE GONE TO WARM
UP THE CAR AND THE AUTOMATIC LOCKS ON THE VEHICLE
HAVE ENGAGED AFTER I HAVE EXITED THE VEHICLE. ON
TWO OF THOSE OCCASIONS, A CHILD HAS BEEN IN THE
VEHICLE, LOCKING THE CHILD IN THE CAR WITH THE CAR
RUNNING. THE CAR DOES NOT HAVE TO BE IN DRIVE, OR
HAVE BEEN MOVING FOR THE LOCKS TO ENGAGE. THE
DOORS LOCK WITHIN SECONDS OF THE CAR DOOR BEING
SHUT AND ONCE THE KEY IS IN THE IGNITION, THE REMOTE
SENSOR CAN NOT BE USED TO UNLOCK THE VEHICLE. *JB

**DATE OF INCIDENT:** January 15, 2007
**DATE COMPLAINT FILED:** December 29, 2008
**NHTSA/ODI ID:** 10253124
**MODEL:** 2001 Honda CR-V
**SUMMARY:**
1. INITIALLY, THE REMOTE DOOR LOCK FOR DRIVER SIDE
DOOR STARTED MAKING A BUZZING NOISE, BUT IT STILL
WORKED. 2. THE INTERIOR DOOR HANDLE LEVER (PLASTIC
WITH A HARD PLASTIC COATING) TO THE DRIVER'S DOOR
BROKE OFF..AND CAUSED SEVERAL CUTS TO MY
HAND...BUT...IT WAS STILL POSSIBLE TO OPEN THE DOOR BY
APPLYING PRESSURE TO THE STUB OF THE LEVER. 3. THE
REMOTE DOOR ENTRY LOCK (TO THE DRIVER DOOR)
STOPPED WORKING, BUT IT WAS STILL POSSIBLE TO LOCK
AND UNLOCK THE DOOR WITH THE KEY. 4. TODAY, IT IS
IMPOSSIBLE TO OPEN THE DRIVER'S DOOR WITH THE KEY OR

WITH THE REMAINS OF THE INTERIOR DOOR LEVER OR BY
ANY OTHER MEANS THAT I CAN FIGURE OUT. THIS IS A VERY
UNSAFE SITUATION CAUSED BY THE FAILURE OF SEVERAL
COMPONENTS THAT SHOULD LAST LONGER THAN THEY
HAVE. *TR


**DATE OF INCIDENT:** May 7, 2007
**DATE COMPLAINT FILED:** February 2, 2010
**NHTSA/ODI ID:** 10303828
**MODEL:** 2003 Honda CR-V
**SUMMARY:**
I REPORTED A DRIVER'S DOOR RATTLE VERY EARLY ON
(DURING THE WARRANTY PERIOD), BUT NO SOURCE WAS
FOUND. ON 5/09/07 (37,792 MILES) THE DRIVER'S DOOR
LOCK/UNLOCK BECAME INOPERABLE, AND I COULD NOT
LOCK/UNLOCK THE DOOR WITH THE REMOTE CONTROL; I
COULD NOT ENTER OR LEAVE THE CAR BY USING THE
REMOTE. AN "ACTUATOR" WAS REPLACED AT MY EXPENSE
($161.61). ON 07/30/09 (48,565 MILES) THE SAME DRIVER'S
WINDOW CAME OFF ITS TRACK, AND THE TRACK HAD TO BE
REINSTALLED AT MY EXPENSE ($90.00) NOW I READ THAT A
DIFFERENT HONDA MODEL HAS BEEN RECALLED WITH
WHAT SEEMS TO BE MY SAME PROBLEM. ALL SERVICES
HAVE BEEN PERFORMED BY THE SAME AUTHORIZED HONDA
DEALER. PERHAPS THERE IS CONNECTION BETWEEN THE
PROBLEMS. *TR


**DATE OF INCIDENT:** July 26, 2011
**DATE COMPLAINT FILED:** September 8, 2011
**NHTSA/ODI ID:** 10424280
**MODEL:** 2004 Honda CR-V
**SUMMARY:**
THE DOOR LOCKING SYSTEM DOES NOT WORK. FROM THE
DRIVER OR PASSENGER SIDE DOOR-LOCK OPEN OR LOCK
ANY DOORS IN THE CAR. THE REMOTE DOOR KEYS DO NOT
WORK AT ALL. THE DOOR LOCKING MECHANISM SEEMS TO
BE COMPLETELY BROKEN. THIS IS THE 2ND HONDA CR-V
WHICH I HAVE SEEN THIS FROM. THIS BECOMES A SAFETY

HAZARD IF THE DOOR MECHANISM IS NOT WORKING
CORRECTLY. *TR

**DATE OF INCIDENT:** July 27, 2009
**DATE COMPLAINT FILED:** March 22, 2012
**NHTSA/ODI ID:** 10452705
**MODEL:** 2004 Honda CR-V
**SUMMARY:**
FAULTY DOOR LOCK ACTUATORS IN HONDA CRV. THREE OF
MY DOOR LOCK ACTUATORS HAVE FAILED SINCE
PURCHASING THE VEHICLE NEW. THE DRIVER SIDE DOOR
FAILED WITHIN 5 YRS, THEN THE PASSENGER SIDE DOOR,
AND NOW ONE OF THE REAR DOORS. THE CAR IS NOT
DRIVEN OFTEN AND HAS UNDER 70,000 MILES ON IT. A
FAILURE OF 3 DOORS CAUSES GREAT CONCERN OF QUALITY
AND SAFETY. *TR

**DATE OF INCIDENT:** January 26, 2013
**DATE COMPLAINT FILED:** January 29, 2013
**NHTSA/ODI ID:** 10495138
**MODEL:** 2003 Honda CR-V
**SUMMARY:**
DOOR LOCKS FAILING. TWO DOORS DO NOT RESPOND TO
MASTER LOCK OR KEYLESS ENTRY. MUST MANUALLY LOCK
AND UNLOCK. POTENTIAL SAFETY ISSUE IF TRYING TO OPEN
DOORS FROM OUTSIDE TO REMOVE CHILD FROM CARSEAT,
ETC. *TR

**DATE OF INCIDENT:** August 18, 2011
**DATE COMPLAINT FILED:** February 20, 2013
**NHTSA/ODI ID:** 10499363
**MODEL:** 2005 Honda CR-V
**SUMMARY:**
THE LOCK ACTUATOR IN BOTH MY DRIVER'S SIDE DOOR AND
THE REAR DRIVER'S SIDE DOOR WENT OUT. I SPENT WELL
OVER $500 IN REPAIRS. IT AFFECTED ALL MY DOORS. THEY
COULD NOT BE LOCKED/UNLOCKED WITH THE KEYLESS
ENTRY NOR WITH THE POWER LOCKS BUTTON INSIDE MY

CAR. MY DOORS HAD TO BE MANUALLY LOCKED AND
UNLOCKED. THIS SEEMS TO BE A VERY COMMON PROBLEM
IN THE CR-V. THE HONDA DEALERSHIP ADMITTED TO ME
THAT THIS HAPPENS FREQUENTLY, BUT CORPORATE HAS
YET TO ISSUE A RECALL. *TR


**DATE OF INCIDENT:** February 27, 2013
**DATE COMPLAINT FILED:** March 2, 2013
**NHTSA/ODI ID:** 10501066
**MODEL:** 2007 Honda CR-V
**SUMMARY:**
THE LOCKS ON MY CAR'S DOORS AUTOMATICALLY RE-LOCK
WITHIN A SECOND OF TRYING TO UNLOCK THEM. WHEN THE
ENGINE IS RUNNING, AND I AM IN PARK, I CANNOT
MANUALLY UNLOCK THE DOORS AT ALL. I AM VERY
NERVOUS THAT I MAY END UP GETTING LOCKED IN MY CAR
WITHOUT THE ABILITY TO EXIT; THIS COULD BE ESPECIALLY
HAZARDOUS IN AN ACCIDENT OR ANOTHER EMERGENCY.
*TR


**DATE OF INCIDENT:** August 13, 2012
**DATE COMPLAINT FILED:** February 21, 2013
**NHTSA/ODI ID:** 10499574
**MODEL:** 2007 Honda CR-V
**SUMMARY:**
ON MY 2007 CRV THE DOORS, IF NOT ALREADY LOCKED,
LOCK AUTOMATICALLY WHEN THE CAR REACHES ABOUT 10
TO 20 MPH. IN MID AUGUST 2012 I BEGAN TO HEAR THE
CLICKING OF THE DOOR LOCKING EACH TIME I STARTED
AFTER BEING STOPPED AT A LIGHT OR HAVING SLOWED
DOWN. I REALIZED THAT THE PASSENGER REAR DOOR WAS
NOT LOCKING. I BROUGHT IT TO BE FIXED AND WAS TOLD IT
WAS THE ACTUATOR. THE COST TO REPAIR WAS $230.00. TWO
MONTHS LATER, IT HAPPENED AGAIN WITH ANOTHER DOOR-
THIS TIME, THE PASSENGER FRONT DOOR. AND THEN IN
DECEMBER IT HAPPENED AGAIN WITH THE DRIVER SIDE
REAR DOOR. I DID NOT GET THE LAST TWO FIXED RIGHT
AWAY DUE TO THE COST (WITH 2 IT WOULD BE AROUND

$500.00 WHICH I DID NOT HAVE AT THE TIME) BUT IT BECAME A SIGNIFICANT PROBLEM BECAUSE I COULD NOT LOCK MY CAR. THIS IS A SAFTEY ISSUE TOO, I DID NOT FEEL COMFORTABLE RIDING IN MY CAR IN CERTAIN NEIGHBORHOODS AND I WAS CONCERNED ABOUT POSSIBLE THEFT OF MY CAR OR ITEMS IN MY CAR SINCE THERE WAS NO WAY TO LOCK THE DOORS. I HAVE HAD THE TWO ACTUATORS REPLACED AND HAVE CONTACTED HONDA BUT THEY SAY THERE IS NO RECALL FOR MY VIN # AND WITH THE MILAGE AND AGE OF MY CAR....HOWEVER, THERE HAVE BEEN SEVERAL OTHER MODELS WITH DOOR LOCK ISSUES. HONDA KNOWS THAT THE DOOR LOCKS ARE/HAVE BEEN AN ISSUE. I BELIEVE IT IS A SAFETY CONCERN THAT HONDA SHOULD ADDRESS. NO ONE SHOULD HAVE TO WAIT UNTIL THEY CAN AFFORD TO FIX THESE LOCKS IN ORDER TO GET THEM FIXED! *TR


**DATE OF INCIDENT:** September 6, 2012
**DATE COMPLAINT FILED:** October 9, 2012
**NHTSA/ODI ID:** 10479435
**MODEL:** 2007 Honda CR-V
**SUMMARY:**
TL* THE CONTACT OWNS A 2007 HONDA CRV. THE CONTACT STATED THAT THE FRONT PASSENGER AND DRIVER SIDE DOOR ACTUATORS FAILED. AS A RESULT, THE CONTACT WAS UNABLE TO ENTER THE VEHICLE. THE VEHICLE WAS TAKEN TO THE DEALER WHERE THE CONTACT WAS ADVISED THAT THE FAILURE WAS COMMON WITH THE 2007 AND 2008 MODEL YEARS. THE FAILURE AND THE CURRENT MILEAGES WERE 57,000. UPDATED 11/16/12*LJ THE CONSUMER STATED 11/5/2012 THE REAR DOOR IS NOW SHOWING SIGNS OF POTENTIAL FAILURE. UPDATED 11/20/2012 *JS


**DATE OF INCIDENT:** May 2, 2010
**DATE COMPLAINT FILED:** October 2, 2012
**NHTSA/ODI ID:** 10478338
**MODEL:** 2007 Honda CR-V
**SUMMARY:**

FRONT DOORS STARTED LOCKING AUTOMATICALLY. AFTER APPROX. 9 MONTHS ALL DOORS STARTED LOCKING AUTOMATICALLY. ALL DOORS WOULD LOCK IMMEDIATELY AFTER ENGINE WAS TURNED OFF, LOCKING ALL OCCUPANTS INSIDE. WOULD LOCK WHEN CAR WAS IDLING IN PARK AND WAS UNABLE TO OPEN DOORS MANUALLY WITH KEY FROM OUTSIDE. CAR WAS STOLEN THEN RECOVERED. WHATEVER WAS USED TO STEAL IT MUST HAVE RESET COMPUTER. BECAUSE FOR APPROX.1 WEEK AFTER RECOVERY DOOR LOCKS WORKED FINE. NOW IT IS BACK TO THE PROBLEM AS BEFORE. MY 1 YR. OLD GRANDSON WAS LOCKED IN THE CAR FOR A BRIEF TIME DUE TO THIS ISSUE, LUCKILY ONE OF THE REAR WINDOWS WAS DOWN AND MY DAUGHTER CRAWLED THRU. I HAVE READ THERE IS A RECALL FOR THIS PROBLEM ON 2006 HONDA CRV, BUT NOT FOR THE 2007. IT IS POSSIBLE THAT LEFT OVER DEFECTIVE PARTS FROM 2006 MODELS WERE USED IN 2007. I AM TOLD I COULD HAVE TO PAY UP TO $900.00 TO REPAIR THIS PROBLEM. I NOT ONLY DON'T HAVE THE MONEY, BUT I DON'T ACCEPT THAT IT SHOULD BE MY PROBLEM. IT'S NOT LIKE IT'S FROM WEAR AND TEAR OR MISUSE OF THE VEHICLE. THIS IS MY THIRD HONDA I'VE OWNED, AND MY LAST UNLESS SOMEONE WOULD AT LEAST ACKNOWLEDGE THERE IS A PROBLEM HERE. THANK YOU *TR


**DATE OF INCIDENT:** March 27, 2012
**DATE COMPLAINT FILED:** August 13, 2012
**NHTSA/ODI ID:** 10470498
**MODEL:** 2007 Honda CR-V
**SUMMARY:**
THE POWER DOOR LOCKS ON MY CAR UNLOCKS AND LOCKS WHILE DRIVING .. PASSENGERS AND DRIVER SIDE DOORS LOCK AND CANNOT REOPEN UNLESS U HAVE THE KEY OR THE DRIVER UNLOCKS THE DOOR MAKING THIS A DANGEROUS SAFETY FEATURE ..THUS IF SOMETHING HAPPENS TO THE DRIVER THE PASSENGERS IN THE CAR CANNOT GET OUT.. SEVERAL TIMES THAT I HAVE GOTTEN OUT OF THE CAR TO GO INTO THE STORE AND LEFT MY HANDICAPPED SISTER IN THE CAR SHE TRIED TO GET OUT TO

USE THE STORES BATHROOM AND FOUND THAT SHE COULD
NOT GET OUT OF THE CAR.. IT WAS LOCKED AND THE POWER
DOOR LOCKS FAILED THIS HAS HAPPENED WAY TOO MANY
TIMES ACCORDING TO THE INTERNET WHEN THIS PROBLEM
IS GOOGLED IT APPEARS TO BE A COMMON PROBLEM
..HONDA NEEDS TO RECALL THESE CARS AND FIX THEM THIS
IS A SAFETY HAZARD IF YOU WERE A PASSENGER AND GOT
INTO AN ACCIDENT WHICH KNOCKS THE DRIVER OUT AND
THERE WAS A CAR FIRE ETC THE PASSENGERS WOULD BURN
TO DEATH BECAUSE THEY CAN NOT OPEN THE DOORS FROM
THE INSIDE ... OR THE OUT SIDE ... PLEASE HELP US HONDA
WANTED 253.00 TO FIX ONE DOOR LOCK I HAVE NO MONEY
TO DO THIS THEY SHOULD RECALL THESE VEHICLES .. AS
THEY ARE AWARE OF THIS PROBLEM ACCORDING TO THE
INTERNET ... *TR


**DATE OF INCIDENT:** June 10, 2011
**DATE COMPLAINT FILED:** November 11, 2011
**NHTSA/ODI ID:** 10435308
**MODEL:** 2007 Honda CR-V
**SUMMARY:**
THE DOOR LOCK ACTUATORS FAIL WITHOUT WARNING.
WHEN TRYING TO EXIT THE VEHICLE THE ACTUATOR IS
STUCK IN THE LOCKED POSITION AND COULD PREVENT
EMERGENCY EXIT OF THE VEHICLE. IT IS VERY DIFFICULT
FOR AN ADULT TO MANUALLY OVERIDE THE LOCK AND
IMPOSSIBLE FOR A CHILD. ONE ACTUATOR FAILURE CAUSES
MULTIPLE DOORS NOT TO FUNCTION CORRECTLY. THE
HONDA DEALER WILL NOT FIX UNDER WARRANTY. *TR


**DATE OF INCIDENT:** July 8, 2011
**DATE COMPLAINT FILED:** August 18, 2011
**NHTSA/ODI ID:** 10420090
**MODEL:** 2007 Honda CR-V
**SUMMARY:**
WE HAVE A PROBLEM WITH THE DOOR LATCH IN OUR 2007
HONDA CR-V ON THE BACK DRIVER SEAT. IT WAS FIXED
UNDER THE WARRANTY. COUPLE MONTHS LATER WE

STARTED HAVING A PROBLEM WITH THE FRONT DRIVER
DOOR. I WAS ON THE WAY BACK HOME WITH AN 8 WEEK
OLD BABY . WHEN I PARKED THE CAR AND TRIED TO OPEN
DOOR I REALIZED THAT THE DOORS WERE COMPLETELY
CLOSED- I COULDN'T OPEN THEM AT ALL. I TRIED SEVERAL
TIMES WITH NO RESULT. THE BABY I WAS CARING ON THE
BACK OF THE SEAT AND I COULDN'T GET OUT OF THE CAR.
AFTER MANY TRIES, I USED THE FRONT PASSENGER DOOR TO
GET OUT OF THE CAR. THE DRIVER DOORS AND THE TRUNK
WERE COMPLETELY CLOSED- JAMMED. I COULDN'T EVEN
OPEN WITH THE KEY. I WAS SO SCARED AS I'M USING THAT
CAR TO GO TO THE DOCTOR OR FOR SHOPPING PURPOSES.
ALL THE TIME MY BABY IS WITH ME AND THIS IS A VERY
SERIOUS SAFETY ISSUE IF YOU CANNOT OPEN THE DRIVER
DOOR. I CALLED MY HUSBAND AND WE WENT TO THE
CLOSEST HONDA SERVICE- MCGRATH HONDA. THEY TOLD
US THAT THEY CAN FIX IT THE NEXT DAY FOR $500. THEY
DID. THE NEXT DAY CAR WAS FIXED, BUT ON MY BACK WAY
HOME I REALIZED THAT FRONT PASSENGER DOOR HAD THE
SAME PROBLEM. I CAME BACK TO THE SERVICE AND THEY
FIX THE DOOR FOR FREE AS IT WERE THE THIRD DOOR WITH
THE SAME ISSUE. MY MAIN CONCERN IS WHAT WILL HAPPEN
IF THE CAR WILL BE ON FIRE? HOW I WILL ESCAPE WITH MY
BABY IF THE DOORS ARE JAMMED? WHAT WILL HAPPEN
WITH MY BABY IF THE SITUATION WILL REPEAT? *KB


**DATE OF INCIDENT:** January 1, 2010
**DATE COMPLAINT FILED:** January 4, 2010
**NHTSA/ODI ID:** 10420090
**MODEL:** 2007 Honda CR-V
**SUMMARY:**
TL* THE CONTACT OWNS A 2007 HONDA CRV. THE CONTACT
STATED THAT THE DRIVER SIDE WOULD NOT UNLOCK FROM
THE INSIDE OR THE OUTSIDE OF THE VEHICLE. THE CONTACT
HAD TO ENTER/ EXIT THE VEHICLE FROM THE PASSENGER
SIDE DOOR. THE VEHICLE WAS TOWED TO A LOCAL BODY
SHOP TO HAVE THE LOCKS REPAIRED. THE CONTACT HAS
NOT CALLED THE MANUFACTURE REGARDING THIS ISSUE.
THE CONTACT FEELS THIS IS A SAFETY ISSUE BECAUSE THE

CONTACT WAS LOCKED OUT OF THE VEHICLE IN FREEZING
COLD WEATHER. FAILURE MILEAGE WAS 44,000. JO

**DATE OF INCIDENT:** October 10, 2012
**DATE COMPLAINT FILED:** December 18, 2012
**NHTSA/ODI ID:** 10489165
**MODEL:** 2008 Honda CR-V
**SUMMARY:**
THE LOCKS ON THE HONDA CR-V 2008 ARE DEFECTIVE AND
CAN POSE A SERIOUS SAFETY ISSUE. THE LOCKS ON THE
DOOR LOCK AT WILL, WON'T UNLOCK WHEN I TRY TO
UNLOCK THEM, AND LOCK WHILE I'M DRIVING AND/OR
PUTTING THE REVERSE. PASSENGERS CANNOT GET OUT OF
THE CAR, EVEN AFTER I PRESS THE UNLOCK BUTTON ON
BOTH THE DOOR AND THE KEY. I FEAR THAT MY TODDLER IS
GOING TO GET LOCKED INTO THE VEHICLE AND/OR TRAPPED
IN IF WE ARE IN AN ACCIDENT. THIS IS A RECURRING
PROBLEM THAT STARTED JUST A FEW MONTHS AFTER I
BOUGHT THE VEHICLE AND MANY OTHER HONDA CR-V
OWNERS ARE REPORTING THE SAME ISSUE, YET HONDA HAS
NOT ISSUED A RECALL FOR THESE DEFECTIVE LOCKS.
PLEASE ADDRESS THIS ISSUE AS A SAFETY ISSUE AND URGE
THEM TO RECALL THESE LOCKS. *TR

**DATE OF INCIDENT:** December 2, 2011
**DATE COMPLAINT FILED:** July 10, 2012
**NHTSA/ODI ID:** 10465114
**MODEL:** 2008 Honda CR-V
**SUMMARY:**
EVERY TIME THE RIGHT FRONT PASSENGER DOOR IS
UNLOCKED EITHER BY THE SWITCH OR MANUALLY, IT
IMMEDIATELY RE-LOCKS ITSELF MAKING IT ALMOST
IMPOSSIBLE TO OPEN THE DOOR. TO OPEN THE DOOR, YOU
MUST KNOW TO BE HOLDING ON THE HANDLE AND PULL IT
IN THE SPLIT SECOND AFTER YOU ACTIVATE THE UN-LOCK
BUTTON. THIS COULD BE EXTREMELY DANGEROUS IN A
SITUATION WHERE THE PASSENGER HAD TO GET OUT OF THE
CAR IMMEDIATELY AS IN CASE OF A FIRE, SUBMERGING IN

WATER OR AFTER A WRECK. I AM FRIGHTENED TO THINK
WHAT WOULD HAPPEN IN ONE OF THESE CASES AND A
CHILD OR UNSUSPECTING ADULT WERE IN THE VEHICLE
AND COULD NOT GET OUT. OF COURSE, THERE ARE MANY
OTHER SCENARIOS WHERE THE PASSENGER WOULD HAVE
TO GET OUT IN A HURRY AND THIS DEFECTIVE LOCKING
MECHANISM WOULD PREVENT THEIR ESCAPE. *TR

**DATE OF INCIDENT:** September 4, 2012
**DATE COMPLAINT FILED:** March 4, 2013
**NHTSA/ODI ID:** 10501287
**MODEL:** 2009 Honda CR-V
**SUMMARY:**
TL* THE CONTACT OWNS A 2009 HONDA CR-V. THE CONTACT
STATED THAT THE PASSENGER SIDE DOOR WOULD NOT
LOCK AUTOMATICALLY AND THE REAR HATCH WOULD NOT
UNLOCK AT ALL. THE PASSENGER SIDE DOOR LOCK WOULD
ONLY LOCK MANUALLY. THE CONTACT CALLED THE
DEALER REGARDING THE LOCKING SYSTEM AND THE
DEALER STATED THAT THE ENTIRE ELECTRICAL
COMPONENT FOR THE LOCKING SYSTEM NEEDED TO BE
REPLACED. THE CONTACT DID NOT HAVE ANY REPAIRS
PERFORMED ON THE VEHICLE. THE FAILURE MILEAGE WAS
57,356.

## CLASS ACTION ALLEGATIONS

73.     Plaintiffs bring this action on their own behalf, and on behalf of the

following Classes pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

Specifically, the Classes consist of each of the following:

**New Jersey Class:**
All persons or entities in New Jersey who are current or former owners
and/or lessees of a Class Vehicle.

**California Class:**
All persons in California who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes, as defined by California Civil Code §1791(a).

**Florida Class:**
All persons or entities in Florida who are current or former owners and/or lessees of a Class Vehicle.

74.     Together, the New Jersey, Florida and California Classes shall be collectively referred to herein as the "Class."  Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change or expand the Class definition.

75.     Numerosity:  Upon information and belief, the Class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that thousands of Class Vehicles have been sold and leased in each of the states that are the subject of the Class.

76.     Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.   whether the electronic door lock systems in the Class Vehicles are

- 38 -

predisposed to fail prematurely;

b.  whether the electronic door lock systems in Class Vehicles contain a design defect;

c.  whether the defective vehicle design is common to all or some of the Class Vehicles;

d.  if so, whether the Door Lock Defect causes the electronic door lock systems to fail in the Class Vehicles;

e.  whether Defendants knowingly failed to disclose the existence and cause of the Door Lock Defect in Class Vehicles;

f.  whether Defendants' conduct violates the New Jersey Consumer Fraud Act and the other statutes asserted herein;

g.  whether, as a result of Defendants' omissions and/or misrepresentations of material facts related to the Door Lock Defect, Plaintiffs and members of the Class have suffered ascertainable loss of monies and/or property and/or value;

h.  whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

77.  <u>Typicality</u>:  All of the Plaintiffs' claims are typical of the claims of the Class since each Plaintiff purchased a Class Vehicle with a Door Lock Defect,

defective vehicle design, and defective door lock actuator, as did each member of the Class.  Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

78.    Adequacy:  All of the Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

79.    Superiority:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation

increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

80.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

### VIOLATIONS ALLEGED

### COUNT I
### VIOLATION OF THE NJCFA
### (On Behalf of the New Jersey Class)

81.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

82.    The New Jersey Consumer Fraud Act ("NJCFA") protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any

merchandise…"  N.J.Stat. Ann. § 56:8-2.

83.    Plaintiffs and members of the Class are consumers who purchased and/or leased Class Vehicles for personal, family or household use.

84.    Defendants also engaged in unlawful conduct in violation of the NJCFA by making knowing and intentional omissions.  Defendants knowingly failed to disclose the design defect in the Class Vehicles in order to secure the sale of these vehicles, and to offer them at a premium price.

85.    Defendants did not fully and truthfully disclose to its customers the true nature of the inherent design defect with the electronic door locking system, which was not readily discoverable until years later, often after the warranty has expired.  As a result, Plaintiffs and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said design defects and all of the resultant problems.  These facts that Defendants concealed were solely within their possession.

86.    Defendants intended that Plaintiffs and all Class members rely on the acts of concealment and omissions, so that they would purchase the Class Vehicles.

87.    Defendants' conduct caused Plaintiffs and Class members to suffer an ascertainable loss.  In addition to direct monetary losses, Plaintiffs and Class members have suffered an ascertainable loss by receiving less than what was

promised.

88.     A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiffs and the Class.  Had the defective vehicle design in the Class Vehicles been disclosed, consumers would not have purchased them or would have paid less for the Class Vehicles had they decided to purchase them.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the New Jersey, California and Florida Classes)**

89.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

90.     Defendants expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly.  Defendants also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge that occurred during the new vehicle and certified pre-owned ("CPO") warranty periods.

91.     Defendants breached this warranty by selling to Plaintiffs and Class members the Class Vehicles with known electronic door locking system problems, which are not of high quality, and which fail prematurely and/or fail to function properly.

92.     As a result of the Defendants' actions, Plaintiffs and Class members

have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

93.    Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

94.    The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Class. Among other things, Plaintiffs and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Honda and Class members, and Honda knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

95.    Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

## COUNT III
## COMMON LAW FRAUD
### (On Behalf of the New Jersey, California and Florida Classes)

96.    Plaintiffs and the Class incorporate by reference each preceding and

succeeding paragraph as though fully set forth at length herein.

97.     Defendants made material omissions concerning a presently existing or past fact.  For example, Defendants did not fully and truthfully disclose to its customers the true nature of the inherent design defect with the door locking system, which was not readily discoverable until years later, often after the warranty has expired.  As a result, Plaintiffs and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said design defects and all of the resultant problems.

98.     These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and Class members rely upon them.

99.     Plaintiffs and Class members reasonably relied on these omissions, and suffered damages as a result.

<u>COUNT IV</u>
**BREACH OF THE DUTY OF GOOD FAITH
AND FAIR DEALING
(On Behalf of the New Jersey, California, and Florida Classes)**

100.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

101.  Every contract in New Jersey contains an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

102.   Defendants breached the covenant of good faith and fair dealing through malicious conduct by, *inter alia*, failing to notify Plaintiffs and Class members of the Door Lock Defect in the Class Vehicles, and failing to fully and properly repair this defect.

103.   Defendants acted in bad faith and/or with a malicious motive to deny Plaintiffs and Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## COUNT V
## VIOLATION OF THE FLORIDA
## DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (On Behalf of the Florida Class)

104.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

105.   The purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202 (2).

106.   Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the practices described above, and by knowingly and intentionally concealing from Plaintiff and Class members the fact that the Class Vehicles suffer from a design defect (and the costs, risks, and

diminished value of the Vehicles as a result of this problem), which was not readily discoverable until years later. Defendants should have disclosed this information because they were in a superior position to know the true facts related to this design defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to this defect until after manifestation of the defect.

107.   These unfair methods of competition and unfair and deceptive acts have caused injuries to Plaintiffs and members of the Class.

**COUNT VI**
**VIOLATION OF THE CALIFORNIA BUSINESS**
**AND PROFESSIONS CODE § 17200**
**(On Behalf of the California Class)**

108.   Plaintiffs and the Class incorporate by reference the allegations of all foregoing Paragraphs as if such had been set forth in full herein.

109.   The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

110.   Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that the Class Vehicles suffer from a design defect (and the costs, risks, and diminished value of the Vehicles as a result of this problem).

Defendants should have disclosed this information because they were in a superior

position to know the true facts related to this design defect, and Plaintiffs and Class

members could not reasonably be expected to learn or discover the true facts

related to this defect.

111.   These acts and practices have deceived Plaintiffs and are likely to

deceive the public.  In failing to disclose the design defect and suppressing other

material facts from Plaintiffs and Class members, Defendants breached their duties

to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and Class

members.  The omissions and acts of concealment by Defendants pertained to

information that was material to Plaintiffs and Class members, as it would have

been to all reasonable consumers.

112.   The injuries suffered by Plaintiffs and Class members are greatly

outweighed by any potential countervailing benefit to consumers or to competition.

Nor are they injuries that Plaintiffs and Class members should or could have

reasonably avoided.

113.   Defendants' acts and practices are unlawful because they violate

California Civil Code §§ 1668, 1709, 1710 and 1750 *et seq.*, and California

Commercial Code § 2313.

114.   Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts

or practices by Defendants, to obtain restitutionary disgorgement of all monies and

revenues generated as a result of such practices, and all other relief allowed under

CAL. BUS. & PROF. CODE § 17200.

**COUNT VII**
**VIOLATION OF THE CALIFORNIA CONSUMERS**
**LEGAL REMEDIES ACT, CALIFORNIA CIVIL**
**CODE § 1750, *ET SEQ.***
**(On Behalf of the California Class)**

115.   Plaintiffs and the Class incorporate by reference the allegations of all

foregoing Paragraphs as if such had been set forth in full herein.

116.   California's Consumer Legal Remedies Act ("CLRA") prohibits

unfair methods of competition and unfair or deceptive acts or practices undertaken

by any person in a transaction intended to result or which results in the sale or

lease of goods or services to any consumer."  CAL. CIV. CODE § 1770.

117.   Defendants are "persons" as defined by Civil Code section 1761(c).

118.   Plaintiff and California Class members are consumers who purchased

or leased the Class Vehicles.

119.   Defendants engaged in unfair and deceptive acts in violation of the

CLRA by the practices described above, and by knowingly and intentionally

concealing from Plaintiffs and Class members that the Class Vehicles suffer from a

design defect (and the costs, risks, and diminished value of the vehicles as a result

of this problem).   These acts and practices violate, at a minimum, the following

sections of the CLRA:

(a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

120.   Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

121.   Defendants knew that the Class Vehicles door locking systems were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

122.   Defendants were under a duty to Plaintiff and Class members to disclose the defective nature of the Class Vehicles and their door locking systems because:

a.      Defendants were in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles and their door locking systems;

    b.    Plaintiff and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles and their door locking systems had a dangerous safety and security defect until manifestation of the defect; and

    c.    Defendants knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover the safety and security defect and the associated repair costs that it causes until manifestation of the defect.

123.   In failing to disclose the Door Lock Defect and the associated repair costs that result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

124.   The facts concealed or not disclosed by Defendants to Plaintiff and Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price.  Had Plaintiffs and the Class known about the defective nature of the Class Vehicles and their door locking systems, they would not have purchased the Class Vehicles or would have paid less for them.

125.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and Class members have suffered and will continue to suffer actual damages.

126.   Plaintiffs provided Defendants with the appropriate pre-suit notice and therefore seek all relief available under the CLRA.

**COUNT VIII**
**FAILURE TO FULLY SET FORTH TERMS OF WARRANTY IN WRITING PURSUANT TO SONG-BEVERLY CONSUMER WARRANTY ACT, CALIFORNIA CIVIL CODE § 1790 *ET SEQ*.**
**(On Behalf of the California Class)**

127.   Plaintiffs incorporate by reference the allegations of all foregoing Paragraphs as if such had been set forth in full herein.

128.   The Song-Beverly Consumer Warranty Act, California Civil Code sections 1790 *et seq.*, requires, at section 1793.1, that a retailer who makes an express warranty fully set forth the terms of the warranty in writing.

129.   Defendants failed to specify in writing, among other things, the requirement of periodic maintenance and/or wear of the Class Vehicles' door lock system, as well as its failure to inform consumers that it has a general policy of not-covering door lock actuator repairs and replacements under warranty.

130.   As a result of Defendants' violations of the Song-Beverly Consumer Warranty Act, Plaintiff and Class members are entitled, pursuant to California Civil Code section 1794, to damages and other legal and equitable relief.

## COUNT IX
## UNJUST ENRICHMENT
### (On Behalf of the California Class)

131.   Plaintiffs and the Class incorporate the foregoing allegations.  This count is pled in the alternative to the contract based claims.

132.   Plaintiffs and members of the Class conferred a benefit on Defendants.

133.   Defendants had knowledge that this benefit was conferred upon them.

134.   Defendants have been unjustly enriched at the expense of Plaintiffs, and their retention of this benefit under the circumstances would be inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

A.      determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.      appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C.       award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D.       award pre-judgment and post-judgment interest on such monetary relief;

E.       grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F.       award reasonable attorney's fees and costs; and

G.       grant such further relief that this Court deems appropriate.


Dated:  March 18, 2013

                          Respectfully submitted,

                 By:     *//s// Joseph G. Sauder*
                          Nicholas E. Chimicles (admitted *pro hac vice*)
                          Joseph G. Sauder
                          Matthew D. Schelkopf
                          Benjamin F. Johns
                          CHIMICLES & TIKELLIS LLP
                          One Haverford Centre

361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail: JGS@chimicles.com
        MDS@chimicles.com
        BFJ@chimicles.com


Jonathan W. Cuneo (admitted *pro hac vice*)
William H. Anderson (admitted *pro hac vice*)
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
E-mail: jonc@cuneolaw.com
        wanderson@cuneolaw.com

***Proposed Co-lead Attorneys for***
***Plaintiffs and the Proposed Class***


Bryan L. Clobes
CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP
1101 Market St., Suite 2650
Philadelphia, PA 19107
Telephone: (215) 864-2800
Facsimile: (215) 864-2810
E-mail: BClobes@CaffertyClobes.com