# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN DAVITT, SCOTT CARTER and MARK TUDYK individually and on behalf of others similarly situated, | No. 2:13-cv-00381-MCA-JBC |
| Plaintiffs, | **CLASS ACTION** |
| vs. | **JURY TRIAL DEMANDED** |
| AMERICAN HONDA MOTOR CO., INC., | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500

Jonathan W. Cuneo
William H. Anderson
CUNEO GILBERT
 & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

I.     INTRODUCTION .........................................................................1

II.    FACTUAL BACKGROUND.......................................................2

    A.    Plaintiffs' Allegations and Pre-Litigation Investigation ......................2

    B.    History of the Litigation ......................................................3

    C.    The Mediation Sessions ......................................................4

    D.    Terms of the Settlement Agreement .........................................5

    E.    Notification to Settlement Class Members ..............................7

    F.    The Preliminary Approval Order and
          Response by Settlement Class Members........................................8

III.   ARGUMENT....................................................................9

    A.    The Settlement Meets the Requirements of Rule 23.............................9

        1.    *Numerosity Under Rule 23(a)(1)* ...............................10

        2.    *Commonality Under Rule 23(a)(2)*...........................11

        3.    *Typicality Under Rule 23(a)(3)*......................... 12

        4.    *Adequacy of Representation Under Rule 23(a)(4)* ..............13

        5.    *The Requirements of Rule 23(b)(3) Are Met*......................15

    B.    The Settlement is Fair, Reasonable and Adequate.............................18

        1.    *The Complexity, Expense and Likely Duration
            of the Litigation Favor Approval*............................................19

        2.    *The Reaction of the Class to the
            Settlement Favors Approval* ..................................................21

            i.     *Overall Response from the Class and Attorneys General* ..................................................21

            ii.    *The Jackson, Slaughter, Eaton and Robinson Objections*.................................23

            iii.   *The Objection by Serial Objector Michael Narkin* ........25

            iv.   *The Final Approval Order Should Require Mr. Narkin to Post an Appeal Bond Should He Appeal the Settlement*.................................32

      3.    *The Stage of the Proceedings and the Discovery Completed Favor Approval* ...................................33

      4.    *The Risk of Failing to Establish Liability Favors Approval* ......................................34

      5.    *The Risk of Establishing Damages Favors Approval* .............35

      6.    *The Risks of Maintaining the Class Action Through Trial, and the Ability of Defendants to Withstand A Greater Judgment Favor Approval*...............36

      7.    *The Range of Reasonableness of the Settlement to a Possible Recovery in Light of All the Attendant Risks of Litigation Favors Approval*........................................37

   D.    The Notice Provided to the Class Satisfies Due Process ...................38

IV.   CONCLUSION...........................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arnold v. FitFlop USA, LLC*,
No. 11-CV-0973 ........................................................................................26, 27

*Arnold v. FitFlop USA, LLC*,
No. 11-CV-0973W(KSC), 2014 U.S. Dist. LEXIS 58800, 2014
WL 1670133 (S.D. Cal. Apr. 28, 2014)........................................................29, 31

*Augustin v. Jablonsky*,
461 F.3d 219 (2d Cir. 2006) ...............................................................................18

*Bell Atlantic Corp. v. Bolger*,
2 F.3d 1304 (3d Cir. 1993) .................................................................................33

*Bezdek v. Vibram USA Inc.*,
No. 12-10513-DPW, 2015 U.S. Dist. LEXIS 5508 (D. Mass. Jan.
16, 2015) .............................................................................................................29

*Bullock v. Administrator of Kircher's Estate*,
84 F.R.D. 1 (D.N.J. 1979)...................................................................................20

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ...........................................................19, 21, 33, 36

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second
Mortg. Loan Litig.*,
418 F.3d 277 (3d Cir. 2005) ...............................................................................29

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
No. 3:08-MD-01998, 2009 U.S. Dist. LEXIS 119870 (W.D. Ky.
Dec. 22, 2009).......................................................................................13, 15, 17

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
543 F.3d 141 (3rd Cir. 2008) .............................................................................13

*Dewey v. Volkswagen of Am.*,
  728 F. Supp. 2d 546 (D.N.J. 2010), *rev'd on other grounds by*
  *Dewey v. Volkswagen Aktiengesellschaft,* 681 F.3d 170 (3d Cir.
  2012) ...................................................................................................9, 16

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)................................................................................39

*In re Elec. Carbon Prods. Antitrust Litig.*,
  447 F. Supp. 2d 389 (D.N.J. 2006).......................................................34

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  No. 08-1365, 2010 U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22,
  2010) .......................................................................................................22

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ........................................................*passim*

*Henderson v. Volvo Cars of N. Am., LLC*,
  No. 09-4146 (CCC), 2013 U.S. Dist. LEXIS 46291 (D.N.J. Mar.
  22, 2013) (Cecchi, J.)
  .................................................................................14, 21, 24, 25

*In re Ikon Office Solutions, Inc.*,
  194 F.R.D. 166 (E.D. Pa. 2000)..........................................................39

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ................................................................18

*In re Ins. Brokerage Antitrust Litig.*,
  No. 04-5184 (CCC), 2012 U.S. Dist. LEXIS 46496 (D.N.J. Mar.
  30, 2012) ...............................................................................................22

*Larsen v. Trader Joe's Co.*,
  No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538 (N.D. Cal.
  July 11, 2014)..............................................................................25, 27, 31

*Miller v. Ghirardelli Chocolate Co.*,
  No. 12-cv-04936-LB, 2015 U.S. Dist. LEXIS 20725 (N.D. Cal.
  Feb. 20, 2015) ..............................................................................*passim*

*Milstein v. Huck*,
  600 F. Supp. 254 (E.D.N.Y. 1984) .......................................................20

*Muise v. GPU, Inc.*,
    371 N.J. Super. 13 (N.J. App. Div. 2004) .........................................................35

*Nelson v. Nissan N. Am., Inc.*,
    2014 U.S. Dist. LEXIS 173567 (D.N.J. Dec. 16, 2014), *appeal
    docketed,* No. 15-1130 (3rd Cir. Jan. 15, 2015) .................................................35

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ..............................................................................38

*In re NFL Players Concussion Injury Litig.*,
    775 F.3d 570 (3d Cir. 2014) ..............................................................................18

*Nieto v. Unitron, LP*,
    No. 06-cv-11966, 2009 U.S. Dist. LEXIS 13230 (E.D. Mich. Feb.
    20, 2009) ......................................................................................................22, 23

*In re Nutella Mktg. & Sales Practices*,
    No. 11-1086, 2012 U.S. Dist. LEXIS 172006 (D.N.J. Nov. 20,
    2012) ...................................................................................................................32

*In re OSB Antitrust Litig.*,
    No. 06-826, 2007 U.S. Dist. LEXIS 56584 (E.D. Pa. Aug. 3, 2007)................10

*Payne v. Fujufilm U.S.A., Inc.*,
    No. 07-385, 2010 U.S. Dist. LEXIS 52808 (D.N.J. May 28, 2010) .................36

*In re Philips/Magnavox TV Litig.*,
    No. 09-3072 (CCC), 2012 U.S. Dist. LEXIS 67287 (D.N.J. May
    14, 2012) ...................................................................................................*passim*

*In re Polyurethane Foam Antitrust Litig.*,
    No. 1:10 MD 2196, 2015 U.S. Dist. LEXIS 23482 (N.D. Ohio Feb.
    26, 2015) ............................................................................................................31

*In re Prudential Ins. Co. Sales Litig.*,
    148 F.3d 283 (3d Cir. 1998) ..........................................................11, 19, 21, 35

*Ritti v. U-Haul Int'l., Inc.*,
    05-4182, 2006 U.S. Dist. LEXIS 23393 (E.D. Pa. Apr. 26, 2006) ...................14

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013) ................................................................................9

*Stalcup v. Schlage Lock Co.*,
   505 F. Supp. 2d 704 (D. Colo. 2007)...................................................35

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011), *cert. denied sub nom. Murray v.
   Sullivan*, 132 S. Ct. 1876 (2012)..............................................16, 17

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)......................................................................11

*Zinberg v. Washington Bancorp, Inc.*,
   138 F.R.D. 397 (D.N.J. 1990)....................................................10, 12

## STATUTES

28 U.S.C. §1920...............................................................................32

Class Action Fairness Act, 28 U.S.C. § 1715.....................................8, 22

## OTHER AUTHORITIES

FED. R. APP. P. 39(e) ........................................................................32

FED. R. CIV. P. 11 ......................................................................28, 31

FED. R. CIV. P. 23 .....................................................................*passim*

# I.    INTRODUCTION

Plaintiffs respectfully request that the Court issue an order granting final approval to the Settlement Agreement (the "SA"), certifying a class for settlement purposes only, and enter a final judgment dismissing the case with prejudice.[1] Consistent with the terms of the SA, Honda does not oppose this requested relief. The SA was preliminarily approved by Judge Hochberg on November 5, 2014, after having been negotiated under the auspices of Judge Alfred M. Wolin (Ret.), an experienced neutral mediator and former Judge of this Court.  As discussed below, the terms of the SA create substantial benefits for a class of hundreds of thousands of consumers; are fair, reasonable and adequate; and meet all of the requisite criteria under FED. R. CIV. P. 23(e) for receiving final approval.  Indeed, the overwhelmingly positive response by settlement class members confirms that granting final approval is warranted.  As discussed below, the handful of objections – one of which was filed by a serial objector – are without merit and do not provide any basis for the settlement to not be approved.  As such, Plaintiffs respectfully request that the Court enter the proposed Order submitted herewith granting final approval to the settlement.

---

[1] The SA was submitted with Plaintiffs' Unopposed Motion for Preliminary Approval, and is set forth at Docket Entry Nos. 55-56 ("DE #").  The capitalized terms used in this Memorandum are defined in §1 of the SA.

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs' Allegations and Pre-Litigation Investigation.

The factual background and procedural history of this case is set forth in Plaintiffs' motion for preliminary approval of the settlement (DE #56) and motion for attorneys' fees and expenses (DE #60), and is set forth herein only insofar as relevant to the instant motion.

This class action lawsuit was commenced on January 18, 2013.  It was filed after an extensive pre-suit investigation by Plaintiffs' counsel that began approximately fifteen months earlier.  It was brought by three named Plaintiffs (residents of New Jersey, California and Florida) who are among the many thousands of purchasers and lessees of model years 2007 and 2008 Honda CRVs and certain 2009 Honda CRVs at issue in the proposed settlement (the "Settlement Class Vehicles").  Plaintiffs alleged in the operative First Amended Complaint ("FAC") that the Settlement Class Vehicles suffer from a door lock defect which causes the door lock actuators to cease operating properly, thereby causing the door locking mechanism to fail to function as intended and expected.  *See* FAC ¶¶ 2-4.

The allegedly defective door lock actuator is a component of the power door locks, which Honda marketed as standard equipment in the Settlement Class Vehicles.  FAC ¶ 14.  Plaintiffs alleged that Honda was aware of the door lock

defect, but failed to disclose it to consumers.  *See, e.g.,* FAC ¶ 67, 94.  The FAC also alleged that the defect typically manifests soon after the expiration of Honda's 3 year/36,000 mile warranty, at which time, Plaintiffs allege, Honda requires consumers to pay all costs related to repairing the defect.  FAC ¶ 2, 8.

###### B.     History of the Litigation.

Plaintiffs filed the FAC on March 18 (DE #24).  On April 16, 2013, Honda filed a motion to dismiss the FAC (DE #27).  Plaintiffs filed a memorandum in opposition on May 6, 2013 (DE #29), and Honda filed a reply brief on May 28 (DE #33).

On August 22, 2013, Magistrate Judge Clark issued a letter order setting an Initial Scheduling Conference for October 16, 2013 (DE #34).  Counsel for the Parties then participated in several meet and confer telephone conferences, and ultimately submitted a Joint Discovery Plan to the Court (DE #37).  Magistrate Judge Clark entered a Scheduling Order the day following the Initial Scheduling Conference (DE #38).

Shortly after the entry of the Scheduling Order, the Parties commenced discovery.  They first negotiated and agreed upon a Discovery Confidentiality Order, which was filed with the Court and approved by Magistrate Judge Clark on October 25, 2013 (DE #39-41).  Then, between October 24 and 31, 2013, Plaintiffs' counsel served their initial disclosures, as well as interrogatories,

document requests and a FED. R. CIV. P. 30(b)(6) deposition notice on Honda.  In addition, Plaintiffs' counsel interviewed multiple non-party witnesses and responded to inquiries from putative class members.

### C.    The Mediation Sessions.

The Parties participated in an initial all-day mediation session on January 15, 2014 before Judge Alfred M. Wolin (Ret.), an experienced mediator and former Judge of this Court.  The material terms of the settlement were agreed upon at the conclusion of this session.

After the Parties agreed upon the framework and material terms of the settlement, they subsequently began negotiating (and ultimately agreed upon) an appropriate request for incentive awards, attorneys' fees and expenses.  This required a second in-person mediation session before Judge Wolin, which occurred on April 1, 2014.  At the conclusion of that session, the parties reached a tentative agreement, subject to Court approval, to resolve all of the remaining issues in the litigation.  All of the terms of the Settlement Agreement are the result of extensive, adversarial, and arm's-length negotiations between experienced counsel for both sides, with the oversight and assistance of a highly skilled and experienced mediator.

**D.      Terms of the Settlement Agreement.**

If it receives final approval, the settlement will provide substantial benefits

to the following Class: All persons who purchased or leased (including initial and

subsequent owners and lessees) 2007 and 2008 Honda CRVs and certain 2009

Honda CRVs distributed for sale in the United States (including Puerto Rico,

Virgin Islands, and Guam) (collectively the "Settlement Class Members").  *See* DE

#56-1.  The Settlement Class specifically includes all United States military

personnel who purchased a Settlement Class Vehicle outside the United States

during military duty.  *Id.*  It excludes officers, directors, or employees of Honda or

affiliated companies, as well as any independent dealers that currently own a

Settlement Class Vehicle.  *Id.*

The valuable benefits made available pursuant to the settlement squarely

address the issues raised in this litigation.  Honda has agreed to perform Door Lock

Actuator Repairs during an extended warranty period that is the greater of either

twice the length of Honda's original warranty or six months from the date of final

approval.  The phrase "Door Lock Actuator Repairs" is defined to include any

diagnosis, repair or replacement of a door lock actuator (excluding the hatchback

lock actuator) performed by an Authorized Honda Dealer or any third-party

automotive repair business (not resulting from accidents, misuse, vandalism, etc.).

SA at § 1.9.  Honda has also agreed to reimburse current and former owners and

lessees for reasonable expenses they incurred for Door Lock Actuator Repairs.

Finally, Honda has agreed to a free replacement of the front driver's-side door lock

actuator, even for Settlement Class Vehicles that have never experienced a door

lock issue.  The benefits made available to these two groups are summarized in the

chart below:

| CATEGORY | BENEFITS |
|---|---|
| Door Lock Actuator Warranty Extension for Current Owners and Lessees | 3 year warranty extension (from the date the original limited car warranty expired) or 6 months from date of the final approval hearing, whichever is longer, for Door Lock Actuator Repairs.  Door Lock Actuator Repairs will be available at no charge if a Settlement Class Vehicle is presented to an Authorized Honda Dealer at any time during the Extended Warranty Period described above. Settlement Class Members are not required to submit a claim form in order to receive the benefit of this extended warranty. |
| Reimbursement for Out-of-Pocket Expenses for Current and Past Owners and Lessees | Settlement Class Members are entitled to recover reasonable Out-of-Pocket Expenses incurred for previous payments (parts and labor) for Door Lock Actuator Repairs completed in the past or within seven days of the mailing of class notice.  To receive reimbursement, a claim form must be submitted with original receipts or other comparable documentation substantiating the requested Out-of-Pocket Expenses.  Out-of-Pocket Expenses are limited to amounts not otherwise reimbursed.  If a Settlement Class Member had a portion of repair costs covered by Honda under warranty or good will, or by some other third party, the amount not covered and paid by the Settlement Class Member will be deemed an Out-of-Pocket Expense. |

| Free Driver's Side Door Lock Repair for Current Owners and Lessees | All current owners and lessees can bring their Settlement Class Vehicles to an Authorized Honda Dealer for free installation of a new door lock actuator on the front driver's side door. |
|---|---|

Any payments made to Settlement Class Members will be via checks, which will be distributed within 60 days following the Effective Date.  The settlement also gives Honda the right to augment the settlement at its discretion to provide further benefits to Settlement Class Members, and to provide goodwill benefits to Settlement Class Members as it sees fit.  Plaintiffs' requested attorney's fees, expenses and incentive awards – which are addressed in separate pending motion – will not reduce the settlement consideration the Settlement Class will receive.

### E. Notification to Settlement Class Members.

The Settlement Agreement contains a robust notice plan, which is being paid for and administered by Honda.  This program was undertaken with Class Counsel's input, and Honda has provided Class Counsel monthly updates regarding administration.  These reports include the number of claimants, number of claims accepted, number of claims rejected, and amounts of claims submitted.

Settlement Class Members were notified of the settlement by direct mail.  As discussed in Plaintiffs' Preliminary Approval Motion, Honda identified Class Members via R.L Polk, and sent the Notice to them by first-class mail.  Honda also set up a dedicated website that includes the notice, claim form, settlement

agreement, and other relevant documents (including this motion).[2]  Honda has also

provided a toll-free number with live operators to field questions, and notified its

dealers of the settlement.

      The notification to Settlement Class Members commenced soon after the

Court provided preliminary approval of the proposed settlement on November 5,

2014, and has since been completed.  Class members will have 60 days following

the date of the final approval hearing to submit claims.  Counsel for Honda has

represented that Honda has also provided notice of the settlement to the

appropriate state and federal officials, as required by the Class Action Fairness

Act, 28 U.S.C. § 1715.  To date, there has been no comment or response received

from any of the attorneys general or other notified officials.

     **F.**    **The Preliminary Approval Order and**
            **Response by Settlement Class Members.**

      As mentioned above, on November 5, 2014, Judge Hochberg issued an order

granting preliminary approval to the Parties' settlement, authorizing the proposed

notification to the class, and scheduling a final approval hearing for May 7, 2015.[3]

*See* DE #57.  Consistent with the SA, this order also provided that Settlement Class

Members have 135 days from the date on which it was entered (*i.e.,* until March

---

[2] http://settlement-claims.com/doorlock/

[3] On December 5, 2014, Chief Judge Simandle issued an order reassigning this
case from Judge Hochberg to Your Honor. *See* DE #58.

20, 2015) to either object or opt-out of the settlement (those Class Members who do not opt-out have an additional 60 days after the date of the final approval hearing to submit a Claim Form). The objections and opt-outs received are discussed below.

### III.   ARGUMENT

Before granting final approval to a class action settlement, the Court should determine whether to certify the class for settlement purposes, and then assess whether the terms of the settlement are fair, reasonable and adequate within the meaning of FED. R. CIV. P. 23(e). *See Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013) ("…in addition to determining whether a proposed settlement is 'fair, reasonable, and adequate, district courts must ensure that each of Rule 23(a)'s requirements, including commonality, is satisfied before certifying a class and approving a class settlement agreement.") (quoting  FED. R. CIV. P. 23(e)). The Court should also determine whether the class members received adequate notice of the settlement.  FED. R. CIV. P. 23 (c)(2)(B).  As set forth below, these requirements are satisfied here.

### A.    The Settlement Meets the Requirements of Rule 23.

Plaintiffs seek certification of the Settlement Class pursuant to FED. R. CIV. P. 23.  "For the Court to certify a class, the plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b)." *Dewey v.*

*Volkswagen of Am.*, 728 F. Supp. 2d 546, 564 (D.N.J. 2010), *rev'd on other grounds by Dewey v. Volkswagen Aktiengesellschaft,* 681 F.3d 170 (3d Cir. 2012). The four requirements of FED. R. CIV. P. 23(a) are numerosity, commonality, typicality, and adequacy.  In addition, Plaintiffs seek certification of the Settlement Class pursuant to Rule 23(b)(3), which provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]."  FED. R. CIV. P. 23(b)(3).

As discussed below, these requirements are met for purposes of settlement in this case.

### 1.      *Numerosity Under Rule 23(a)(1).*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  "Generally, if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40, the numerosity requirement of Rule 23(a) has been met."  *In re OSB Antitrust Litig.*, No. 06-826, 2007 U.S. Dist. LEXIS 56584, at *5 (E.D. Pa. Aug. 3, 2007).  *See also Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of

numerosity.").  Here, the total number of Settlement Class Vehicles is approximately 488,000.[4]  Numerosity is therefore easily satisfied.

### 2.  *Commonality Under Rule 23(a)(2).*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  "A finding of commonality does not require that all class members share identical claims, and factual differences among the claims of the putative class members do not defeat certification."  *In re Prudential Ins. Co. Sales Litig*., 148 F.3d 283, 310 (3d Cir. 1998).  The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do."  *Id*. at 2556.

In this case, there are a myriad of common questions of law and fact, such as whether the door lock actuators in the Class Vehicles suffer from a uniform design

---

[4] Because many Settlement Class Vehicles have been re-sold, the total number of class members is greater than that figure.  As represented by Honda, 792,768 notices were sent to class members.  *See* Declaration of Tony Fiteni at ¶ 2.

defect, whether Honda had a duty to disclose this alleged defect to Settlement

Class Members, whether its warranty limitations on Class Vehicles are

unconscionable or otherwise unenforceable under the circumstances, and whether

Plaintiffs have actionable claims.  Commonality is therefore satisfied.  *See, e.g. In*

*re Philips/Magnavox TV Litig.*, No. 09-3072 (CCC), 2012 U.S. Dist. LEXIS

67287, at *13 (D.N.J. May 14, 2012) (finding commonality satisfied based upon a

similar list of common questions).

### 3.      *Typicality Under Rule 23(a)(3).*

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of

those of other class members.  FED. R. CIV. P. 23(a)(3).  The typicality requirement

is satisfied as long as the named plaintiffs and the class "point to the same broad

course of alleged fraudulent conduct to support a claim for relief." *Zinberg*, 138

F.R.D. at 401.  "If the named plaintiffs and class members involve the same

conduct by the defendant, typicality is established." *Inmates of the*

*Northumberland County*, No. 08-cv-345, 2009 U.S. Dist. LEXIS 126479, at *71

(M.D. Pa. Mar. 17, 2009) (quoting *Newton v. Merrill Lynch, Pierce, Fenner &*

*Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001)).  Factual differences between

class representatives and other members of the class do not preclude a finding of

typicality, so long as the plaintiffs' claims arise from the same event or course of

conduct and are based on the same legal theories. *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 150 (3rd Cir. 2008).

Here, all of Plaintiffs' claims arise out of the same alleged conduct by the Defendants related to their design, manufacture and sale of the allegedly defective door lock actuators (and their alleged failure to disclose that material fact). This requirement is, therefore, met. *See In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287, at *14.

### 4.   *Adequacy of Representation Under Rule 23(a)(4).*

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 U.S. Dist. LEXIS 119870, at *19 (W.D. Ky. Dec. 22, 2009) (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)).

In addressing the adequacy of the proposed class representative, district courts examine whether he or she "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and

that there is no conflict between the individual's claims and those asserted on behalf of the class." *Ritti v. U-Haul Int'l., Inc.*, 05-4182, 2006 U.S. Dist. LEXIS 23393, at *15 (E.D. Pa. Apr. 26, 2006).

Here, all of the Class Representatives are adequate, in that they each purchased one of the Class Vehicles subject to the Settlement Agreement and were allegedly injured in the same manner based on the same alleged defect.  They have also each actively participated in the prosecution of this case, and have been in constant communication with their attorneys regarding the litigation, including these settlement proceedings.  *See In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287, at *16.

With respect to the adequacy of Class Counsel, they have invested considerable time and resources into the prosecution of this action.  Class Counsel have a wealth of experience in litigating complex class action lawsuits and were able to negotiate an outstanding Settlement for the Class in this case.  The resumes of Class Counsel have been filed on the docket and are available at DE #45. Notably, Class Counsel in this case – Chimicles & Tikellis LLP ("C&T") – has recently been found by this Court to be adequate class counsel in the context of a similar automobile consumer class action settlement.  *See Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146 (CCC), 2013 U.S. Dist. LEXIS 46291, at *16 (D.N.J. Mar. 22, 2013) ("Class Counsel [including C&T] and their respective law firms

14

have extensive experience  litigating complex class actions and obtaining class action settlements. …Thus, the Court finds that Class Counsel has the qualifications, experience, and ability to conduct the litigation.") (Cecchi, J.).  The adequacy requirement is, accordingly, met here.

## 5.    The Requirements of Rule 23(b)(3) Are Met.

Plaintiffs seek to certify the Settlement Class under Rule 23(b)(3), which has two components: predominance and superiority.  *See* FED. R. CIV. P. 23(b)(3).  "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'"  *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 U.S. Dist. LEXIS 119870, at *25 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996)).  When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required.  *Amchem Products,* 521 U.S. at 618 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

With respect to predominance, the Third Circuit has stated that the focus of the "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 298 (3d Cir. 2011), *cert. denied sub nom. Murray v. Sullivan*, 132 S. Ct. 1876 (2012).  "To determine whether common issues predominate over questions affecting only individual members, the Court must look at each claim upon which the plaintiffs seek recovery … determine whether generalized evidence exists to prove the elements of the plaintiffs' claims on a simultaneous, class-wide basis, or whether proof will be overwhelmed by individual issues." *Dewey,* 728 F. Supp. 2d at 568.  With respect to superiority, the Court "considers whether or not a class action is a superior method of fairly and efficiently adjudicating the controversy." *Id.* at 569. Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination.  These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action.  *Id.* (quoting FED. R. CIV. P. 23(b)(3)).

Here, there are several common questions of law and fact that predominate over any questions that may affect individual Class Members.  For example, were this case to proceed, the primary issue would be whether Honda is liable to the Class under the claims pled in the Complaint based on the alleged existence of a design defect and its related conduct.  This is an issue subject to "generalized proof," and is a "question that is common to all class members."  *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., 2009 U.S. Dist. LEXIS 119870, at *26 ("the proof required [must focus] on Defendant's conduct, not on the conduct of individual class members.").  *Accord, Sullivan*, 667 F.3d at 299. Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied.  *See* FED. R. CIV. P. 23(b)(3).  The SA provides members of the Settlement Class with the ability to obtain prompt, predictable, and certain relief, and contains well-defined administrative procedures to assure due process.  This includes the right of any Class Members who are dissatisfied with the Settlement to object to it, or to exclude themselves.  The Settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Honda, by going forward with this case as a class action.  And because the parties seek to resolve this case

through a settlement, any manageability issues that could have arisen at trial are marginalized. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 269 (3d Cir. 2009).

Finally, the Parties are not aware of any other currently pending lawsuit brought by a consumer against Honda for the conduct alleged in this case. Therefore, "class status here is not only the superior means, but probably the only feasible [way]…to establish liability and perhaps damages." *Augustin v. Jablonsky,* 461 F.3d 219, 229 (2d Cir. 2006) (quoting *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004)).

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

### B.    The Settlement is Fair, Reasonable and Adequate.

The Third Circuit has recently reiterated that "[t]he approval of a class-action settlement is governed by Rule 23(e)(2), which specifically requires that a district court approve a settlement agreement only 'after a hearing and on finding that it is fair, reasonable, and adequate.'" *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 581 (3d Cir. 2014) (quoting FED. R. CIV. P. 23(e)(2)).  This Court has stated that "'the Court is required to 'independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.'" *In*

re *Philips/Magnavox TV Litig*., 2012 U.S. Dist. LEXIS 67287, at *22 (quoting *In re Cendant Corp. Litig*., 264 F.3d 201, 231 (3d Cir. 2001)).  The Court must also "direct notice in a reasonable manner to all class members who would be bound by the proposal."  *See* FED. R. CIV. P. 23(e)(1).

The Third Circuit has directed the district courts to consider the following non-exhaustive list of factors in deciding whether to approve a proposed class action settlement:

> (1) the complexity, expense and likely duration of the litigation . . .;
> (2) the reaction of the class to the settlement . . .; (3) the stage of the
> proceedings and the amount of discovery completed . . . ; (4) the
> risks of establishing liability . . . ; (5) the risks of establishing
> damages . . . ; (6) the risks of maintaining the class action through
> the trial . . . ; (7) the ability of the defendants to withstand a greater
> judgment; (8) the range of reasonableness of the settlement fund in
> light of the best possible recovery. . . ; (9) the range of
> reasonableness of the settlement fund to a possible recovery in light
> of all the attendant risks of litigation . . . .

*In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283 at 317, *quoting Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  Applying these factors to the Settlement here makes clear that it is eminently fair, reasonable and adequate and should be approved.

### 1.    The Complexity, Expense and Likely Duration of the Litigation Favor Approval.

The first factor assesses "the probable costs, in both time and money, of continued litigation."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir.

2001).  Courts have consistently held that "[t]he expense and possible duration of the litigation [should] be considered in evaluating the reasonableness of [a] settlement."  *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *Bullock v. Administrator of Kircher's Estate*, 84 F.R.D. 1, 10-11 (D.N.J. 1979) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation.").

The claims advanced on behalf of the Settlement Class involve numerous complex legal and technical issues, and would have required, *inter alia*, expert testimony at trial.  Moreover, the case has been vigorously litigated since January 18, 2013, and, absent a Settlement (and assuming Plaintiffs prevailed on the pending motion to dismiss), Honda would have aggressively opposed class certification, and certainly moved for summary judgment on the merits.[5] Continued litigation would be complex, time consuming and expensive, with no certainty of a favorable outcome.  The Settlement Agreement secures substantial benefits for the Class with none of the delay, risk and uncertainty of continued litigation.  Thus, this first *Girsh* factor, standing alone, strongly favors approval

---

[5] Honda is represented by some of the most capable firms in the country (Sidley Austin LLP and Greenbaum, Rowe, Smith & Davis LLP), who have vigorously defended it in this case.

of the Settlement.  *See In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS

67287, at *24-25.

> **2.      *The Reaction of the Class to the Settlement Favors Approval.***

The second factor "attempts to gauge whether members of the class support

the settlement," *Prudential*, 148 F.3d at 318, and the Class's support "creates a

strong presumption . . . in favor of the Settlement." *Cendant*, 264 F.3d at 235.  As

discussed below, this factor strongly supports approval of the settlement.

> **i.      *Overall Response from the Class and Attorneys General.***

The deadline by which class members could object to or exclude themselves

from the SA was March 20, 2015.[6]   To date, a total of only five people claiming to

be class members filed objections, and 109 individuals have elected to opt out.[7]

When compared to the 792,768 notices sent to class members, these objections

represent approximately 0.000006% of the Class, and the exclusions represent

approximately 0.0001%.  This Court has noted that such a response is indicative of

the fairness of the settlement, and provides further proof that it should be approved.

*See Henderson*, 2013 U.S. Dist. LEXIS 46291, at *24 ("These numbers amount to

---

[6] *See* Paragraph 12 of the Preliminary Approval Order (DE #57).  Class Members still have until July 6, 2015 to submit claim forms.

[7] *See* Declaration of Tony Fiteni at ¶ 4.

miniscule fractions of the Settlement Class (approximately .0005% [opt-outs] and .0001% [objections], respectively)….The paucity of negative feedback in the face of an extensive notice plan leads the Court to conclude that the Settlement Class generally and overwhelmingly approves of the Settlement.") (internal citations omitted). *See also, In re Ins. Brokerage Antitrust Litig.*, No. 04-5184 (CCC), 2012 U.S. Dist. LEXIS 46496, at *69 (D.N.J. Mar. 30, 2012) (noting that a "small number of objections by Class Members to the Settlement weighs in favor of approval.").

        As noted above, notice of the SA, along with the other Settlement documents, were provided to the Attorneys General of each of the 50 states pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.  None of these officials have expressed any objection to any aspect of the Settlement Agreement.  Courts routinely cite this fact as supporting final approval.  *See Garner v. State Farm Mut. Auto. Ins. Co.,* No. 08-1365, 2010 U.S. Dist. LEXIS 49477, at *37 (N.D. Cal. Apr. 22, 2010) ("Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."); *Nieto v. Unitron, LP*, No. 06-cv-11966, 2009 U.S. Dist. LEXIS 13230, at *4 (E.D. Mich. Feb. 20, 2009).

####        ii.        *The Jackson, Slaughter, Eaton and Robinson Objections.*

The handful of objections that have been received do not provide any basis for the settlement not to receive final approval.  Preliminarily, it is not entirely clear whether many of these submissions are, in fact, "objections" to the settlement.  For example, on February 2, 2015, Oregon resident Kathie Jackson sent a letter that states "the settlement should be approved with special emphasis on what should be shown on all Honda's shop computers…" *See* DE # 59, at 3.  Indeed, Ms. Jackson's letter to the Court contains a claim form that she apparently filled out and filed with the claims administrator.  Ms. Jackson appears to be under the impression that she will not be entitled to be reimbursed for parts because she did not take her vehicle to an authorized Honda dealer.  *See id.* at 1.  The SA, however, provides that if it receives final approval, Settlement Class members will be eligible for the reimbursement of money previously paid for a "Door Lock Actuator Repair" – which is defined in section 1.9 as repairs performed either by Honda or "any third party automotive repair business."  *See* SA § 4.5.  Thus, to the extent this is construed as an objection, it is undermined by the SA.

The objections by Justine M. Slaughter, Day Ann Eaton, and Harry Robinson each criticize various aspects of the settlement. Ms. Slaughter appears to be complaining that the settlement should provide her with reimbursement for rear

hatch (or hatchback) actuator repairs, in addition to side door lock actuator repairs.[8]

Ms. Eaton believes that the extended warranty period is too short, and contends

that Honda should instead "warrant all the door locks for at least 100,000 miles and

have no time limit."  And Mr. Robinson objects because he claims there is no

Honda Dealership within 30 miles of his house or located within the county where

he lives.  Each of these objections essentially contends that the settlement

consideration is not good enough – an argument that is routinely rejected in this

context.  As Judge Cecchi aptly explained in *Henderson*:

> This Court's role is to determine whether the proposed relief is fair,
> reasonable and adequate, not whether some other relief would be
> more lucrative to the Class. A settlement is, after all, not full relief but
> an acceptable compromise. Full compensation is not a prerequisite for
> a fair settlement. Moreover, complaining that the settlement should
>  be 'better'. . . is not a valid objection.  Objections based solely on the
> amount of the award lack merit.

---

[8] Claims related to the Rear Hatch are not being released under the SA. The
settlement website contains the following explanation:

> **WHAT DO I GIVE UP IF THE SETTLEMENT IS APPROVED?**
> The settlement provides for a "release" of claims related to power
> door lock actuator failures on the CR-Vs (excluding the hatchback
> lock actuator) but does not include claims arising from death, personal
> injury, or property damage. This means you would not be able to sue
> over the cost of replacing a door lock actuator or any other monetary
> losses you might incur as a result of a door lock actuator failure.

*See also,* SA at section 1.9 (defining the phrase "Door Lock Actuator Repair" as a
door lock actuator repair, not including "the hatchback lock actuator.").

*Id. at* \*26-27 (internal citations and quotations omitted).[9]  And, of course, each of these objectors had the opportunity to opt-out of the settlement to pursue these claims had they wished to do so.  *Id.*at \*28.  Their objections should be overruled.

### iii.  The Objection by Serial Objector Michael Narkin.

Finally, on or around March 18, 2015, Class Counsel received a letter-objection from a serial objector named Michael Narkin.  "Michael Narkin is a former attorney who resigned from the California Bar facing 16 counts of misconduct." *Larsen v. Trader Joe's Co*., No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538, at \*24, n.5 (N.D. Cal. July 11, 2014). [10]  It has been reported that this resignation was related to "allegedly ripping off his clients and botching their cases" as well as "misappropriating their money and dishonesty."[11]  It has also been reported that in 1996, Mr. Narkin attempted to create an online law school –

---

[9] *Accord, In re Philips/Magnavox TV Litig.,* 2012 U.S. Dist. LEXIS 67287, at \*27-28  (rejecting similar objections, and observing that "[t]his Court's role is to determine whether the proposed  relief is fair, reasonable and adequate, not whether some other relief would be more lucrative to the Class. A settlement is, after all, not full relief but an acceptable compromise…Full compensation is not a prerequisite for a fair settlement.")

[10] *See* Exhibit A to the Schelkopf Decl.,
http://members.calbar.ca.gov/fal/Member/Detail/59793

[11] *See* Exhibit B and C to the Schelkopf Decl.

the Saratoga University School of Law – an endeavor which resulted in law

students accusing him of fraud.[12]

   These days, it appears Mr. Narkin has taken to filing frivolous objections to

class action settlements across the country.[13]  Between January 14, 2014 and

January 25, 2015 alone, Mr. Narkin has filed objections to seven different class

action settlements (not including this one).[14]  In every single case, he has also filed

an appeal to the circuit court after his objection was denied by the district court.

The objection Mr. Narkin has submitted in this case is practically verbatim to those

he has filed in other cases.[15]  Indeed, one district court recently observed that Mr.

Narkin has "made the same, identically phrased objection in the past, where it was

also overruled." *Miller v. Ghirardelli Chocolate Co.,* No. 12-cv-04936-LB, 2015

U.S. Dist. LEXIS 20725, at *34, n.5 (N.D. Cal. Feb. 20, 2015) (citing *Arnold v.

FitFlop USA, LLC*, No. 11-CV-0973 W, 2014 U.S. Dist. LEXIS 58800, 2014 WL

1670133, *8 (S.D. Cal. Apr. 28, 2014)).  The district court in *Arnold* found – in the

context of an *in forma pauperis* application filed by Mr. Narkin to excuse the filing

fee to appeal one of his rejected objections – that Mr. Narkin's appeal "is not taken

---

[12] *Id.*

[13] *See* Exhibit D to the Schelkopf Decl.

[14] *Id.*

[15] *See* Exhibits E, F, G, H I, J, and K to the Schelkopf Decl.

26

in good faith." *Arnold v. FitFlop USA, LLC*, No. 11-CV-0973 W, 2014 U.S. Dist.

LEXIS 91161, at *4 (S.D. Cal. July 3, 2014). *See also, Larsen*, 2014 U.S. Dist.

LEXIS 95538, at *23 ("Mr. Narkin's objection is based on three misplaced

contentions.").

      Notwithstanding the fact that Mr. Narkin's objection here acknowledges that

he received a door lock actuator repair free of charge, Mr. Narkin has objected to

this settlement here on numerous grounds.  Preliminarily, Mr. Narkin's objection

should be summarily stricken for its failure to comply with paragraph 11 of the

preliminary approval order.  *See* DE #57.  Specifically, Mr. Narkin has not

complied with the requirement that the objection provide a list of all proposed

settlements to which he has previously objected in the last five years (obviously a

highly material omission here), nor did he provide evidence of his claimed door

lock actuator repairs or verify that he actually reviewed the Settlement Class

definition.  *See id.* at ¶ 11(c), (e), (g).  An objection filed by Mr. Narkin in another

case was recently stricken for his failure to comply with similar requirements.

*Miller v. Ghirardelli Chocolate Co.,* No. 12-cv-04936-LB, 2015 U.S. Dist. LEXIS

20725, at *28-29 (N.D. Cal. Feb. 20, 2015) (collecting cases where objections have

been stricken for this reason).

      To the extent the Court is inclined to even consider the merits of Mr.

Narkin's objections, they fare no better.  Mr. Narkin offers extensive criticism of

the parties for their "improper request" for the entry of a protective order, which he claims "raises the specter of collusion," and "may be indicia of a consciousness of unfairness and collusion."[16]  These speculative concerns are frivolous and do not appear to be presented with any good faith basis whatsoever. *Cf.,* FED. R. CIV. P. 11.  The discovery confidentiality order entered in this case on October 25, 2013 by Magistrate Judge Clark was done in accordance with Local Civ. 5.3, and was supported by declarations from counsel for each party that articulated exactly why good cause existed for the entry of a protective order in this case.  *See* DE #39-41. As one court recently explained in rejecting this exact same argument by Mr. Narkin in *Miller, supra*:

> First, both objectors refer to perceived collusion, but this court finds no evidence of collusion… Mr. Narkin contends that the entry of the protective order governing confidential documents indicates unfairness and collusion and deprives him of his purported right as a class member to view all the documents submitted in the litigation… There is no evidence that Mr. Narkin has ever asked to see any particular document. And objectors do not have an unfettered right to discovery. *See In re Wachovia Corp. "Pick-A-Payment" Mortgage Mktg. & Sales Practices Litig*., 2011 U.S. Dist. LEXIS 45136, 2011 WL 1496342, *1 (N.D. Cal. Apr. 20, 2011) ("While objectors are entitled to meaningful participation in the settlement proceedings, and leave to be heard, they are not automatically entitled to discovery or to question and debate every provision of the proposed compromise."). The court finds no indication of collusion anywhere in this lawsuit and cannot accept these objections.

---

[16] *See* Narkin Objection at 1, 2.

*Miller*, 2015 U.S. Dist. LEXIS 20725, at *31.[17]  This identical argument was also advanced by Mr. Narkin -- "and rejected as meritless" -- in yet two additional cases.  *Bezdek v. Vibram USA Inc.*, No. 12-10513-DPW, 2015 U.S. Dist. LEXIS 5508, at *29, n.14 (D. Mass. Jan. 16, 2015); *Arnold v. FitFlop USA, LLC*, No. 11-CV-0973W(KSC), 2014 U.S. Dist. LEXIS 58800, 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014).  Mr. Narkin's letter does not acknowledge these cases, much less explain why this Court should reach a different conclusion here.

Mr. Narkin next objects on grounds that the settlement does not protect "the interests of sub-classes members who may have other, unrelated claims against defendants such as those arising from tort…"  Once again, this contention appears to be recycled from other baseless objections filed by Mr. Narkin in other cases and, also again, is directly refuted by the record.  As Class Counsel has since advised Mr. Narkin, to the extent this objection relates to personal injury tort claims, pages 2 and 6 of the Settlement Agreement make clear that any such claims related to "death, personal injury, or property damage" are not being released.  Additionally, item 9 of the Notice explains to class members that while the

---

[17] This rule about objectors not having an absolute right to discovery is consistent with the law in the Third Circuit. *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.,* 418 F.3d 277, 316 (3d Cir. 2005) ("*Girsh* cannot stand for the proposition that, as a general matter, objectors have an absolute right to discovery.").  Mr. Narkin's copied and pasted objection filed in this case certainly presents no reason to deviate from this general rule here.

settlement provides for a "release" of claims related to power door lock actuator failures on the CR-Vs, it ***does not include*** claims arising from death, personal injury, or property damage.  As such, this objection has no merit either.

Finally, Mr. Narkin objects to Class Counsel's requested attorney's fees and expenses on the grounds that they "constitute over reaching and represent[] unjust enrichment."  The *Miller* court summarily rejected this same, verbatim argument (grammatical errors included) by Mr. Narkin in that case: "Mr. Narkin objects that 'the amount of the proposed attorney fees of up to $1,575,000 constitutes over reaching [sic] and represents unjust enrichment.' …He offers no further explanation or analysis. Such '[c]onclusory and unsubstantiated objections are not sufficient to warrant a reduction in fees.'" *Miller*, 2015 U.S. Dist. LEXIS 20725, at *33 (internal citations omitted).  Class Counsel here has fully documented and justified their requested attorney's fees and expenses (*see* DE #60).  Mr. Narkin's objection is not even responsive to this filing.

In addition to challenging the amount of the requested attorney's fees, Mr. Narkin also questions the process by which the fee was agreed upon.  His objection criticizes Class Counsel as having been "free to discuss attorney fees without the bother of having to be adversaries on behalf of the class."  Once again, this baseless assertion is directly contradicted by sworn declaration submitted by Class Counsel which states that the parties only began negotiating an appropriate request

30

for attorneys' fees *after* they had reached agreement on the framework and material terms for settlement.  *See* DE # 60-3, at ¶ 4.  This declaration also confirms that these negotiations were performed at a mediation session with the assistance of Judge Wolin.  *Id.*  As with his other cookie cutter objections, Mr. Narkin has asserted this baseless argument elsewhere, without success.  *See Larsen*, 2014 U.S. Dist. LEXIS 95538, at \*25 ("Mr. Narkin alleges that 'plaintiffs' counsel saw no need to engage in real discovery to determine what the case was worth.  Instead, they were free to discuss attorney fees without the bother of having to be adversaries . . . .' Mr. Narkin's objection appears to be based on his belief that the parties colluded.  As I conclude in section H below, there is no evidence of collusion."); *Arnold v. FitFlop USA, LLC*, 2014 U.S. Dist. LEXIS 58800, at \*23 ("…taking into account the extended settlement negotiations required to resolve the case, the Court finds Mr. Narkin's claim of an indicia of a consciousness of unfairness and collusion without merit.").  Mr. Narkin's imagined "collusion" among the parties simply does not exist.

Mr. Narkin's use of objections that he has clearly copied and pasted from his use in other cases illustrates precisely why Plaintiffs sought to require objectors to confirm that they actually read the settlement materials before lodging an objection.  *Accord,* FED. R. CIV. P. 11.  Mr. Narkin's objection here is frivolous, presented for an improper purpose, and should be summarily rejected.  *See In re*

31

*Polyurethane Foam Antitrust Litig*., No. 1:10 MD 2196, 2015 U.S. Dist. LEXIS 23482, at *19-20 (N.D. Ohio Feb. 26, 2015) ("Narkin also objects. Direct Purchasers give this objection more attention than it deserves in their response..."). In sum, even with the distraction of Mr. Narkin's meritless objection, this G*irsh* factor strongly favors approval.

> ### iv.   The Final Approval Order Should Require Mr. Narkin to Post an Appeal Bond Should he Appeal the Settlement.

While not directly relevant to the *Girsh* analysis, given Mr. Narkin's track record described above, Plaintiffs respectfully request that the final approval order provide that in the event he files an appeal from any order of this Court granting final approval to the settlement and/or denying his objection, he be required to post an appeal bond pursuant to 28 U.S.C. §1920 and FED. R. APP. P. 39(e). *See In re Nutella Mktg. & Sales Practices,* No. 11-1086, 2012 U.S. Dist. LEXIS 172006, at *5-8 (D.N.J. Nov. 20, 2012) (assessing a $22,500 bond on appealing objectors after observing "the unresponsiveness of the Objectors' briefs in the present motion, coupled with the fact that the Objectors appear to be objectors who repeatedly raise objections in class actions around the country, further suggest that their appeal in this case is meritless."). Plaintiffs respectfully request that the Court impose a bond in the amount of $25,000 on Mr. Narkin. Courts frequently impose proactive appeal bonds in connection with the actual final approval order

before a notice of appeal has been filed (as opposed to waiting until after the appeal is filed after final approval is granted).[18]  Plaintiffs respectfully submit that there is already a sufficient record at this point to impose one as to Mr. Narkin at this time.  As such, proposed language granting this relief has been added to the proposed final approval order submitted herewith.

### 3. *The Stage of the Proceedings and the Discovery Completed Favor Approval.*

The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Cendant*, 264 F.3d at 235.  Unsurprisingly, "post-discovery settlements are more likely to reflect the true value of the claim and be fair."  *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993).

Settlement negotiations began in this case only after Honda's motion to dismiss the case was fully briefed and *sub judice*.  As discussed above, the Settlement Agreement was reached as a result of extensive, arm's-length negotiations between experienced counsel, and which culminated in several days

---

[18] *See* Exhibit L to the Schelkopf Decl. ("In the event that either or both of the objectors file(s) a notice of appeal related to this order, any order granting final approval to the settlement, and/or any order regarding class counsel's request for fees, expenses, and incentive awards, the appealing objector(s) must post an appeal bond in the amount of $25,000 within 10 business days after the notice of appeal is filed.").  Plaintiffs here propose substantially identical language.

of mediation sessions before Alfred M. Wolin (Ret.).  Plaintiffs' counsel had

received and responded to inquiries from numerous putative class members and

conducted its own investigation, and received and reviewed documents produced

by Defendants.  Since the Settlement Agreement was reached through arm's-

length negotiation between counsel highly experienced in consumer products

litigation, and "this negotiation process follows meaningful discovery, the

maturity and correctness of the settlement becomes all the more apparent."  *In re*

*Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 400 (D.N.J. 2006).

Accordingly, the third *Girsh* factor strongly favors approval of the Settlement.

### 4.      *The Risk of Failing to Establish Liability Favors Approval.*

In negotiating and reaching the Settlement Agreement, Class Counsel were

aware of the difficulties and risks associated with proving liability.  Honda would

likely have contested whether evidence acquired through documents and

testimony showed pre-sale knowledge by Honda of a common defect related to

the door lock actuators, and whether the warranty it provided with the Class

Vehicles was unconscionable.

While Class Counsel believe they can present a strong liability case, the

case was not without risks.  To that end, in assessing the Settlement Agreement,

the Court should balance the benefits afforded the Settlement Class, including the

*immediacy* and *certainty* of a recovery for a definitive Settlement Class against

the risks of continued litigation. *See Prudential*, 148 F.3d at 317 (noting how "settlement provide[s] class members the opportunity to file claims immediately after court approval of the settlement, rather than waiting through what no doubt would be protracted litigation."). *See also, Stalcup v. Schlage Lock Co*., 505 F. Supp. 2d 704, 707 (D. Colo. 2007) (recognizing that "any class action presents complex and difficult legal and logistical issues which require substantial expertise and resources." ). This case in particular presented very risky issues, both as to the merits and class certification. *See Nelson v. Nissan N. Am., Inc.*, 2014 U.S. Dist. LEXIS 173567, at *8-9 (D.N.J. Dec. 16, 2014) (granting car manufacturer's motion for summary judgment as to NJCFA and other state consumer protection statutes where the Court found that "[t]he record does not reasonably support a finding that [defendant] knew about the alleged design defect at the time the [vehicles] were sold."), *appeal docketed,* No. 15-1130 (3rd Cir. Jan. 15, 2015).

In light of the risk associated with ultimately proving liability on a class-wide basis, this *Girsh* factor supports approval of the Settlement Agreement.

### 5.    *The Risk Of Establishing Damages Favors Approval.*

Even if Plaintiffs were to successfully establish Honda's liability, Plaintiffs still would have likely met substantial challenges in proving damages, and doing so on a class-wide basis.  The presentation of damage testimony is a complex matter.  *See Muise v. GPU, Inc.*, 371 N.J. Super. 13 (N.J. App. Div. 2004)

(discussing evidence required for class-wide diminution in value proof).  In this action, damages would have been aggressively contested at trial.[19]  While Class Counsel believe convincing testimony could be provided on the damages question and a judgment could ultimately be obtained for the full amount of damages available under the law, it is certainly possible that, in the unavoidable "battle of experts," a jury might disagree with Plaintiffs' position.  *See Cendant*, 264 F.3d at 239 ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").  Accordingly, this *Girsh* factor supports approval of the Settlement.  *See In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287, at *32-33.

> **6.    *The Risks of Maintaining the Class Action
> Through Trial, and the Ability of Defendants
> to Withstand A Greater Judgment Favor Approval.***

The sixth and seventh *Girsh* factors also favor approval of the Settlement.  Although Plaintiffs believe that their claims asserted are well-suited for treatment on a class-wide basis, Honda would have argued that certification was inappropriate because individual issues predominate over common issues.  *See, e.g.*, *Payne v. Fujufilm U.S.A., Inc.*, No. 07-385, 2010 U.S. Dist. LEXIS 52808

---

[19] Of course, the inevitable post-trial motions and possible appeals could also negatively impact the scope of promptness of any recovery by the Class if the matter were not resolved.

(D.N.J. May 28, 2010) (denying class certification in a post-warranty consumer case). Honda was also sure to argue that individual facts, such as driving and usage habits, would make class certification improper.

With respect to the ability of the Defendant to withstand a greater judgment, although there is currently no indication that Honda here would be unable to withstand a more significant judgment, to withhold approval of a settlement of this size because it could withstand a greater judgment would make little sense where the SA is within the range of reasonableness and provides substantial benefits to the Class. Accordingly, both the sixth and seventh *Girsh* factors favor approval of the Settlement. *See also, In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287, at *35 ("Plaintiffs acknowledge that there is currently no indication that Defendant here would be unable to withstand a more significant judgment. Nevertheless, the Court is satisfied that the Settlement is fair, reasonable, and adequate, despite the possibility that Philips could pay a greater sum.") (internal citations omitted).

### 7. *The Range of Reasonableness of the Settlement to a Possible Recovery in Light of All the Attendant Risks of Litigation Favors Approval.*

The eighth and ninth *Girsh* factors—the range of reasonableness considering the best possible recovery and the risks of litigation—also support approval of the Settlement. The determination of a "reasonable" settlement is not susceptible to a

mathematical equation yielding a particularized sum.  Rather, "in any case there is

a range of reasonableness with respect to a "settlement."  *Newman v. Stein*, 464

F.2d 689, 693 (2d Cir. 1972).

Given the size of the Settlement Class, the potential benefits available, and

the aforementioned risks in proving liability and damages and in obtaining class

certification, the Settlement Agreement fairly and adequately rewards the class.

Thus, the Settlement is fair, adequate and reasonable under the *Girsh* factors.

### D.     The Notice Provided to the Class Satisfies Due Process.

In accordance with the Court's Order preliminarily approving the

Settlement, the Settlement Administrator sent the Court-approved settlement

information by U.S. mail to all of the unique households on the Class List.[20]  In

addition, the Settlement Administrator established a dedicated website,

http://settlement-claims.com/doorlock/index.aspx, which provides the Settlement

Notice and other pertinent documents, including the Claim Form and the

Settlement Agreement, "frequently asked questions" and contact information if

potential Class Members have additional questions, as well as information on

which models and serial numbers are part of the Settlement, how to submit a Claim

---

[20] Pursuant to Paragraph 7(c) of the Preliminary Approval Order, Honda will provide the Court with additional details about the Notice Program at least 14 days before FA hearing.

Form or an objection or how to opt out of the Settlement Agreement.  Further, the

Settlement Administrator established a toll-free telephone number that Class

Members are able to utilize if they have questions about the Settlement and/or need

assistance completing their Claim Forms.

This Notice program unquestionably meets the due process requirements of

FED. R. CIV. P. 23, which calls for "the best notice practicable under the

circumstances, including individual notice to all members who can be identified

through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173

(1974) (emphasis omitted). *See also, In re Ikon Office Solutions, Inc.*, 194 F.R.D.

166, 174 (E.D. Pa. 2000) ("In order to satisfy due process, notice to class members

must be 'reasonably calculated under all the circumstances, to apprise interested

parties of the pendency of the action and afford them an opportunity to present

their objections.'") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339

U.S. 306, 314 (1950)).  In this regard, potential Settlement Class Members have

been (i) provided with direct notice of the Settlement Agreement; (ii) fully

informed of their rights and obligations under the Settlement Agreement; and (iii)

provided with the resources to ask questions and, to the extent necessary, receive

assistance in submitting Claim Forms.

39

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court

certify the class for purposes of effectuating the settlement, approve the settlement

as fair, reasonable and adequate, and dismiss this action with prejudice.


Dated:  April 10, 2015                    Respectfully submitted,

                                          By:    *//s// Matthew D. Schelkopf*
                                                 Joseph G. Sauder
                                                 Matthew D. Schelkopf
                                                 Benjamin F. Johns
                                                 CHIMICLES & TIKELLIS LLP
                                                 One Haverford Centre
                                                 361 West Lancaster Avenue
                                                 Haverford, PA 19041
                                                 Telephone: (610) 642-8500
                                                 E-mail:     JGS@chimicles.com
                                                             MDS@chimicles.com
                                                             BFJ@chimicles.com

                                                 Jonathan W. Cuneo
                                                 William H. Anderson
                                                 CUNEO GILBERT
                                                   & LADUCA, LLP
                                                 507 C Street, NE
                                                 Washington, DC 20002
                                                 Telephone: (202) 789-3960
                                                 Facsimile: (202) 789-1813
                                                 E-mail:     jonc@cuneolaw.com
                                                             wanderson@cuneolaw.com

                                                 *Attorneys for Plaintiffs*
                                                  *and the Proposed Class*